## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARLOS A. CORDERO AYALA,<br><br>Plaintiff<br><br><br>v.<br><br>THE UNITED STATES POSTAL SERVICE,<br>LOUIS DEJOY, POSTMASTER<br><br>Defendants | **CIVIL NO.**<br><br>Rehabilitation Act; Title VII of the Civil Rights Act; the Americans with Disabilities Act<br><br>**Damages and Punitive Damages, Attorney's fees and costs**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

**TO THE HONORABLE COURT:**

Plaintiff Carlos A. Cordero Ayala, through the undersigned counsel, respectfully states and prays as follows:

### I.    PRELIMINARY STATEMENT

1.    This is an action brought against defendant United States Postal Service (hereinafter USPS) pursuant to: (a) The Rehabilitation Act (RA), 29 U.S.C. sec. 791 et seq.; (b) Title VII of the Civil Rights Act, as amended, 42 U.S.C. 2000-e et seq, specifically sec. 2000-e16 (a), prohibiting discrimination practices in the USPS; (c) The Civil Rights Act of 1990, or American with Disabilities Act, ADA, amending the RA sec. 501 to allow the  recovery of punitive damages in cases of intentional violations, 42 U.S.C. sec. 1981; requesting damages, for, including but

not limited to, actual, moral, compensatory and other damages, including, but not limited to, severe psychiatric harm and damages, including major depression, and pain and suffering, intentional affliction of emotional pain, alienation of familial affections, intentional infliction of actual physical damages by intentional disregard of medical conditions, loss of income, financial losses, medical costs, and permanent emotional and psychiatric damages, amongst others.  Plaintiff Cordero Ayala also requests attorneys' fees and costs.

## II.     **JURISDICTION AND VENUE**

2.     The jurisdiction of this Court is original and invoked under 28 U.S.C. §§ 1331 and 1343.  This action is authorized and instituted pursuant to various federal statutes, including Title VII of the Civil Rights 1964 ("Title VII"), as Carlos A. Cordero, the Plaintiff, has exhausted his administrative remedies because an appeal to the U.S. Equal Employment Opportunity Commission ("EEOC") filed on June 26, 2018 from the defendant USPS's final agency decision, which was reversed on appeal by the EEOC, in a decision dated February 26, 2020.

3.     Venue is proper in this District because all acts and events by the defendant USPS occurred in the Commonwealth of Puerto Rico.

4.     Plaintiff Carlos A. Cordero Ayala demands a trial by jury on all claims asserted in this Complaint.

### III. **PARTIES**

5.     Plaintiff Carlos A. Cordero Ayala is a resident of Carr. 353 Km. 4, Barrio Quemados, Mayagüez, Puerto Rico, and with a postal address: HC4, Box 46586, Mayagüez, Puerto Rico  00680 was  United States  Postal  employee  in the Caparra Heights Station in Guaynabo, Puerto Rico.

6.     Mr. Louis DeJoy is the Postmaster General and Chief Executive Officer of the United States Postal Service, whose address is: USPS Postal Service Headquarters 475 L'Enfant Plaza, Washington, D.C., 20260.  At all times relevant hereto, Defendant was acting through his agents, subsidiaries, officers, employees and assigns acting within the full scope of their agency, office, employment or assignment.

### IV. **FACTS COMMON TO ALL CAUSES OF ACTION**

7.     Plaintiff Carlos A. Cordero Ayala started working for the USPS in

8.     At all relevant times, Plaintiff Cordero Ayala was a City Carrier (CC-1) at the Caparra Heights Station in San Juan, Puerto Rico.

9.     The description for City Carrier, Occupation Code: 2310-2009, lists position duties include casing mail, preparing mail in sequence for delivery, handling undeliverable mail, delivering mail on a prescribed route, using portable electronic scanner, delivering and collecting charges on customs, postage-due and C.O.D. mail, depositing collected mail, checking and correcting mail cards, furnishing customers with information, and reporting unusual incidents or conditions.  See EEO Record, Exhibit 2, at 1-2.

10.     An Essential Functions Review Worksheet for the position of City Carrier, indicates that the functional requirements of the position include lifting up to 70 pounds,

3

carrying 45 pounds, straight pushing, reaching above the shoulder, using both hands, walking, standing, crawling, kneeling, repeated bending, and use of both legs.

11.    The EEOC has already determined that Mr. Cordero Ayala is an individual with a disability within the meaning of the law.  See Appeal No. 0120182273, dated February 26, 2020, at 4.  The EEOC also determined that Mr. Cordero Ayala could not perform the essential functions of the City Carrier position without a reasonable accommodation.  Id. at 5.

12.    Indeed, the EEOC ordered the USPS that within sixty (60) calendar days of February 26, 2020, the USPS "shall conduct a supplemental investigation into this complaint as follows:

a) The USPS "shall supplement the record with documentation, including sworn statements, that reveals whether there were vacant positions to which Complainant was qualified to be reassigned with or without a reasonable accommodation, and to what extent, the Agency conducted a search for an equivalent vacant position to which it could have reassigned Complainant."

a) The USPS "shall grant Complainant an opportunity to address for the record whether he could have performed the essential functions of vacant positions with or without reasonable accommodation."

13.    The USPS, however, to discriminate and retaliate against Mr. Cordero Ayala did nothing and never provided Mr. Cordero Ayala with any information about what jobs are vacant or will become vacant within a reasonable time.

14.    This action follows after the USPS' intentional failure to comply with the Order by the EEOC.

**A. EEO'S DETERMINATION**

15.    Plaintiff filed a Charge of Discrimination (Agency No. 4J-604-0081-11) with the Equal Employment Opportunity Commission on November 4, 2017.

Plaintiff was issued a final decision from the EEOC on May 25, 2018, alleging that Mr. Cordero failed to prove that the USPS discriminated against him.  Mr. Cordero was informed of his right to file on appeal.  In June 26, 2018, Mr. Cordero appealed the decision to the EEOC.

16.    The EEOC vacated the final decision and remanded Mr. Cordero's case to the USPS on February 26, 2020.

17.    Although the USPS was ordered by the EEOC to, among others, conduct a supplemental investigation designed to determine what vacant positions were available for Mr. Cordero, the USPS did nothing.

18.    Plaintiff Mr. Cordero timely filed this action despite the Covid-19 pandemic.

**B.** **Plantar Faciitis,  CDL Strain/Myositis Unilateral and Peripheral Neuropathy And Depression**

19.    By the year 2012, Plaintiff Cordero was diagnosed with a disability: Plantar Faciitis.[1] Plaintiff's plantar faciitis flared from time to time because of prolonged standing, walking long distances, and carrying a heavy mailbag.

20.    In 2015, Plaintiff Cordero was diagnosed with Unilateral and peripheral neuropathy.[2]

---

[1] Plantar fasciitis "involves inflammation of a thick band of tissue that runs across the bottom of your foot and connects your heel bone to your toes (plantar fascia).Plantar fasciitis commonly causes stabbing pain that usually occurs with your first steps in the morning." See https://www.mayoclinic.org/diseases-conditions/plantar-fasciitis/symptoms-causes/syc-203548

[2] Peripheral neuropathy, "a result of damage to the nerves outside of the brain and spinal cord (peripheral nerves), often causes weakness, numbness and pain, usually in your hands and feet. It can also affect other areas of your body." See https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20352061

21.    However, Plaintiff in 2015 was able to perform his duties with limitations on the amount of walking and standing.  In 2016, his pain in his feet became excruciating and he was also diagnosed with CDL Strain/Myositis.[3]  In 2016, Plaintiff Cordero underwent physical therapy sessions.

22.    In May of 2016, Plaintiff Cordero sought further medical assistance as he began experiencing requiring episodes of sharp pain and burning in his feet.  He is diagnosed with plantar fasciitis and not responsive to treatments such as steroidal injections and insoles, among others.  He is eventually also diagnosed with lumbar radiculopathy a peripheral neuropathy (Dr. Ramón Rivera Morales, psychiatrist).

23.    In March of 2017, Plaintiff Cordero is again given a diagnosis of plantar fasciitis/neouropathy and the doctor issues a certificate directed at his employer, defendant USPS.

24.    Due to the harassment and hostile work environment by the USPS management, Plaintiff Cordero was hospitalized in 2014 at a psychiatrist hospital. Among the USPS harassers were Juan Santos and Richard Lugo of the Bayamon Branch station and notorious harassers in the USPS.

24A.  Supervisor Martin Acevedo's harassment of Plaintiff Cordero at the Loiza station consisted of overwhelming Plaintiff Cordero with work that he could not perform in his allotted time to impose concocted disciplinary measures on him. A union delegate from Bayamon understood the harassment and persecution by

---

[3] Myositis refers to any condition causing inflammation in muscles. Weakness, swelling, and pain are the most common myositis symptoms.

Acevedo against Plaintiff Cordero and helped Mr. Cordero by offering him to cover vacation time in the Bayamon Branch.  Plaintiff Cordero immediately took the opportunity and began working in the Bayamon Branch station.

25.     Plaintiff Cordero was prescribed Symbalta, Neurotin, Celebrex to deal with his depression and anxiety.

26.     Plaintiff Cordero's new temporary manager Carlos del Toro in the Bayamon Branch in 2015 began a campaign of harassment against plaintiff due to his medical condition, including humiliating him with comments, including but not limited, that Mr. Cordero was acting and faking his pain,  threats and calling him irresponsible.

27.     In the month of April of 2016, Plaintiff Cordero began to work at the Caparra Height station in his position as a City Carrier and at first everything was fine, and his depression began to level off.   Plaintiff Cordero began to take less medication for his depression.

28.     In December of 2016, Plaintiff Cordero began to suffer constant pain in his left calf which left him out of his job for the entire month.  Immediately, upon his return, the management of the Caparra Heights Station began a pattern of harassment and humiliation against Plaintiff Cordero.

29.     The harassment reached such levels that Plaintiff Cordero contemplated suicide. He began to seek more intense medical help.

30.     At all relevant times, Plaintiff Cordero's supervisor were the Customer Services supervisor Hector Quinones, and the Manager, Customer Services Debbie Diaz. Mr. Quinones admitted before the EEOC that he became aware of the complainant having

a medical condition related to his feet, although he falsely claimed that he found out "in January 2017."

31.    The manager Ms. Diaz admitted before the EEOC that she knew Mr. Cordero had a medical condition, but she declared it "a foot condition."   She stated that the complainant has restrictions on standing; walking, and lifting, and that he can only work seven hours per day

32.    The executive Ms. Velazquez stated that the complainant alleged a medical condition during the DRAC (District Reasonable Accommodation Committee) meeting on August 8, 2017.  She stated that, according to Mr. Cordero, he can only stand for 15 minutes.

33.    While he worked at the USPS, Mr. Cordero never received any disciplinary or disciplinary proceedings or actions until 2015 when he began to be harassed by his supervisor.

34.    On February 10, 2016, Mr. Cordero filed a report of a violence threat against him by the Manager of the situation as witnessed by supervisor Milton Burjas.  José Andújar, the Manager told Mr. Cordero that he was a "problematic" person, that he was trying to get attention and even kicking him out of the station building after violently taking away his punch out employment card.  Mr. Cordero Ayala was so afraid of a physical aggression that he called the Postal Police.

35.    As further explained below, Mr. Cordero is and was at all relevant times a disabled individual within the meaning of the law.  Aside from his severe physical ailments and permanent conditions, he suffers from major depression. See EEO Record, Affidavit A, at 2-3.

36.    Mr. Cordero's work restrictions include not standing for more than 10 minutes and walking with the use of a cane.  The evidence shows that Mr. Cordero's medical conditions limit him in his personal life in that he must use a cane or disabled carts to get around and cannot bend or lift anything over 15 pounds.

C.    **Similarly Situated Employees**

37.    All the relevant aspects of his or her employment situation are virtually identical to those of the other employees who he or she alleges were treated more favorably.

38.    The information about other similar situated employees to Plaintiff is in the possession of the Defendant USPS.  To illustrate, Carrier Nelson Izquierdo had physical problems and was accommodated with a light duty assignment. Nelson Izquierdo is a former City Carrier at the Bayamon Main Branch whose last day in a pay status was January 2, 2016. See EEO Record, Exhibit 12. Likewise, an employee at the General Post Office, David Rovira, was a carrier who is now performing light duty work.

39.    Instead of investigating and showing his intent to discriminate, the USPS' Mr. Quinones declared that "he has no information" or knowledge concerning an accommodation for Nelson Izquierdo.

40.    It is well-settled that the USPS as an employer must be able to accommodate an individual with disabilities like Carlos Cordero particularly when the USPS had plenty of jobs existing within the organization, including light duty positions.

41.    Manager Ms. Diaz stated that Plaintiff Cordero was accommodated

with light duty assignments based on his restrictions from January 2017 through August 2017.  See EEO Record, Affidavit B, at 8.

42.    The Defendant USPS never offered an adequate explanation for the discrepancy in treatment between the complainant and similarly situated employees

### C.    Injuries At Work.

43.    As it is undisputable, Plaintiff Cordero's job duties as a City carrier led him to develop plantar faciitis, a permanent medical condition.  Plaintiff's job required him for more than eight hours, carry heavy parcels weighing up to 70 pounds, carry a satchel weighing up to 35 pounds, and bending and walking through obstacles.

44.    Plaintiff Cordero's job duties as a City carrier led him to develop CDL Strain/Myositis Unilateral and Peripheral Neuropathy and depression.

45.    It is undisputable, from the unrefuted medical evidence, that Mr. Cordero's medical conditions prevented him from standing for more than 10 minutes and that used a cane when walking. See EEO Record, Affidavit A, at 4.  At this time he is moving around with the help of a mobility cart.

46.    Even the USPS's Mr. Quinones admitted before the EEOC cannot perform his job duties as a carrier.

47.    On January 27 of 2016, Mr. Cordero filed a claim for Traumatic Injury indicating that he sustained an injury at work on that same day as a result of his employment as a city delivery carrier with the United States Postal Service. Specifically, Mr. Cordero explained that the injury occurred when he was bitten by

a dog while he was delivering mail on TR 24 in front of 1145 Calle Bertero a dog from address 1147 Calle Bertero escaped and bit him on hois left foot.

48.     Indeed, the record in the EEOC show that Mr. Cordero requested on or about January 11, 2017, light duty due to his condition. See EEO Record, Affidavit B, at 8.  Again, on January 27, 2017, Mr. Cordero requested light duty until his doctor could reevaluate him. See EEO Record, Affidavit C, at 8.

49.     A Work Restriction Evaluation Form - Light Duty, dated January 11, 201.7 indicated that Mr. Cordero had the following restrictions: (1) sitting and bending for 3 hours each per day; (2) walking, squatting, and standing for 2 hours each per day; (3) lifting, kneeling, and twisting for 1 hour each per day; (4) lifting up to 20 pounds; and (5) no climbing. (See EEO Record, Affidavit B,  1 0).

50.     Another Work Restriction Evaluation Form- Light Duty, dated March 3, 2017, indicated Mr. Cordero had the following restrictions: (1) intermittent sitting, walking, lifting, bending, squatting, climbing, kneeling, twisting, and standing for up to 6 hours each per day; and (2) lifting up to 30 pounds.  See EEO Record, Affidavit B, at 12.

51.     The EEO record included the same restrictions dated March 24, 2017 and June 7, 2017.  See EEO Record, Affidavit B, at 13-14. The record included the same restrictions, with the exception of a change to up to 7 hours per day dated July 12, 2017 and August 2, 2017.  See EEO Record, Affidavit 8, pp. 15, 17.   The record included the same restrictions, with the exception of a change to up to 4 hours per day dated September 13, 2017.

52.    In short, Mr. Cordero had as substantially limited in the major life activity of walking.  Accordingly, as the EEO evaluator was forced to admit, by January of 2017 Mr. Cordero had an actual disability within the meaning of the Rehabilitation Act and the Americans with Disabilities Act.

53.    **<u>Medical Conditions Of Plaintiff</u>**.  Among Plaintiff Carlos A. Cordero medical conditions include Bilateral Tarsal Tunnel Syndrome, Bilateral Plantar Chronic Fasciitis, Motor Polyneuropathy of Posterior Tibilais Nerve, Motor Mono-Neuropathy of the left Common Peroenal Nerve, Right L-4, L-5 Radiculopathics, and Right S-1 Radiculity.  His work restrictions include not standing for more than 10 minutes and walking with the use of a cane. The complainant stated that his medical conditions limit him in his personal life in that he must use a cane or disabled carts to get around and cannot bend or lift anything over 15 pounds.

54.    Moreover, Plaintiff suffers from major depression caused by his employment at the USPS, which has required his hospitalization in 2017, 2018 and 2019, including Hospital San Juan Capestrano and Hospital Panamericano.

55.    Mr. Cordero was discriminated based on his disabilities (including, but not limited to, Neuropathy/Plantar Fasciitis and depression), as his request for light duty accommodation was not granted by the Defendant USPS.

56.    Due to his obvious disability, requested light duty on May 16, 2017. The USPS did nothing, except reject Mr. Cordero's request for a reasonable accommodation.

57.    More importantly, the Rehabilitation Act imposed an obligation on the defendant USPS to find reasonable ways to accommodate a qualified individual

with a disability.  The defendant USPS did the exact opposite, refusing to allow Plaintiff Cordero a qualified person with a disability to perform in alternative job, or to be considered for a position he desired and requested, or providing no alternative such as information about vacant or soon to be vacant positions.

58.    The USPS was required to accommodate Mr. Cordero, either through reassignment, to a suitable vacancy or otherwise.

### D.    Mr. Cordero's Request for Reasonable Accommodation Is Denied Without Basis

59.    On or about May 16, 2017, Mr. Cordero made a Request for Reasonable Accommodation requesting an accommodation based on the following restrictions: (1) intermittent standing and walking for 30 minutes; (2) lifting up to 35 pounds; and (3) work eight hours with intermittent standing, sitting., and walking. See EEO Record, Affidavit A, at 11-12.

60.    Plaintiff Cordero met with a committee of the USPS in August 2017. Notwithstanding the availability of light duty throughout the USPS, on October 27, 2017, Mr. Quinones called him into the office and told him that he could not work due to his condition.

61.    On November 10, 2017, Ms. Beda Velazquez, the Manager of Labor Relations sent him a letter, rejecting his request for light duty reasonable accommodation. See EEO, Affidavit A, at 5.

62.    According to the USPS' Beda Velazquez Plaintiff Cordero was not a qualified individual with a disability within the meaning of the Rehabilitation Act. See EEO Record, Exhibit 7, at 1.

63.    The USPS even disregarded the recommendation of Plaintiff Cordero's psychiatrist Raúl Benítez Pérez, M.D., who recommended that from October 28, 2017 through March 31, 2018, Plaintiff Cordero should rest.  See EEO Record, Exhibit 8.

64.    On February 26, 2018 Plaintiff Cordero was notified by supervisor Quiñones and Postmaster Yvonne Rodríguez of his termination from the postal service effective March 31, 2018for "inability to perform the duties of your position".

65.    The consequences of the USPS discrimination and retaliation were devastating for Mr. Cordero.  By 2019 Plaintiff Cordero Ayala was out of a job without any income to support his family and to take care of his basic necessities including housing.  Eventually, plaintiff Cordero moved into his parents-in-law's house.  Mr. Cordero went into a serious depression and tried to kill himself and was hospitalized at San Juan Capestrano hospital in August of 2019.

66.    Mr. Cordero has lost his health insurance and is unable to afford the treatment and medications that he needs.

## V.    CAUSES OF ACTION

### A. FIRST CAUSE OF ACTION
### VIOLATIONS OF TITLE VII

67.    Plaintiff incorporates each and every allegation of paragraphs 1 through 66 as if set forth in full herein.

68.    As described above, Defendant USPS by its action or inaction of its agents interfered with the terms and conditions of Mr. Cordero's employment and Mr. Cordero's performance in his job by subjecting his to a hostile environment based upon disability discrimination, retaliatory harassment, and disparate

treatment, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-c *et seq*; as amended by inter alia the Civil Rights Act of 1991.

69.     Tellingly, Defendant USPS never bothered to investigate Mr. Cordero's claims of discrimination, disparate treatment and retaliation or take any action to remedy it.  To illustrate, at the Bayamon Branch station, Richard Lugo and Juan Santos refused to provide overtime or help with a route that was not inspected for accuracy.  Indeed, when Juan Santos finally inspected the route, he realized that Plaintiff Cordero was correct in that it was overburdened.  Additionally, the USPS refused to comply with the law by searching for a vacant position for Mr. Cordero as a reasonable accommodation or to offer any relevant information, such as possible future vacant positions.

70.     To the contrary, as described above, the USPS did not even acknowledge that Mr. Cordero was disabled or that he was retaliated by his supervisor in violation of Title VII of the Civil Rights Act of 1964.

71.     Additionally, without any basis, on or about May 26, 2017, Mr. Cordero's supervisors controverted his OWCP claim.  Supervisor Quiñones knew about Plaintiff Cordero's disabilities from the first day he began working at the Caparra Heights station.  Plaintiff Cordero himself informed supervisor Quiñones in December of 2017 of his medical condition and disabilities. But USPS Supervisor Quiñones lied to the EEOC in that he stated in writing that he was never informed of Plaintiff Cordero's pain while working.

72.     Due to the disability discrimination, harassment, and disparate treatment by Defendant USPS, Plaintiff has suffered severe emotional and

psychological damages and a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to his damage.

73.   Because of the conduct by the USPS' management, Mr. Cordero suffered a serious deterioration in his health including severe psychiatric damage, including major depression.

74.   Because of the conduct by the defendant USPS, Mr. Cordero was subjected to an extraordinarily hostile environment, causing his unusual stress which affected his health, and his family life.

75.   Because of the conduct by the defendant USPS, Mr. Cordero has suffered extensive emotional and physical damages, including but not limited to loss of sleep, appetite disturbances, tension, anxiety, nervousness, concern about his future and that of his family.

76.   As a result of the conduct by the defendant's USPS, Mr. Cordero's reputation and his future professional career have been seriously adversely affected and he lost his job because of the discrimination and harassment and his access to health care.

77.   Due to the discrimination, harassment and hostile environment Mr. Cordero suffered, he is entitled to relief in the form of compensatory damages to the statutory maximum of ONE MILLION DOLLARS ($1,000,000.00), as well as costs, interests and attorney's fees.

78.   Mr. Cordero is also entitled to back pay, as well as payments for the reduction in his anticipated compensation pursuant to the federal step system, as part of his equitable relief.

**B.    SECOND CAUSE OF ACTION**
**RETALIATION – 42 USC § 2000e *et seq.***

79.    Plaintiff incorporates each and every allegation of paragraphs 1 through 78 as if set forth in full herein.

80.    Plaintiff Carlos Cordero is a male, who engaged in protected activity under Title VII of the Civil Rights Act of 1964. In November of 2017, he filed a complaint of discrimination and harassment against the USPS with the Equal Employment Opportunity Commission.

81.    As demonstrated above, Mr. Cordero had reasonable cause to believe that the conduct he complained of violated Title VII of the Civil Rights Act of 1964.

82.    The USPS subjected Mr. Cordero to multiple acts of intentional and malicious retaliation due to his protected activity, including but not limited to, unjustified discipline and a refusal to accommodate his medical limitations and refusal to investigate.  In particular, both supervisor Santos and manager Lugo

83.    In subjecting Mr. Cordero to retaliation and retaliatory terms and conditions of employment, the USPS acted with malice or with reckless indifference to the federally protected rights of Mr. Cordero.

84.    As the direct and proximate result of the USPS' retaliation of Mr. Cordero due to his protected activity, he has suffered a loss of income and benefits, a future loss of income and benefits, emotional and mental distress, lost employment opportunities, attorney fees and costs, and other damages.

85.     The USPS' denial of equal employment opportunities to Mr. Cordero, and retaliation, has caused, continues to cause, and will cause Mr. Cordero severe psychiatric harm and damages and pain and suffering and to suffer substantial damages for pecuniary losses, mental anguish, severe emotional distress, loss of enjoyment of life, and other non-pecuniary losses.

86.     As explained above, Plaintiff Mr. Cordero has suffered damages in an amount not less than THREE HUNDRED THOUSAND DOLLARS ($300,000.00).

**C.     THIRD CAUSE OF ACTION**
**        DISABILITY DISCRIMINATION AND RETALIATION 29 U.S.C. § 791**

87.     Mr. Cordero hereby incorporates each and every allegation set forth in paragraphs 1 through 86, as though set forth in full herein.

88.     Mr. Cordero a qualified individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* Mr. Cordero is an individual with a disability who at the time could perform the essential functions of his position, with and without reasonable accommodations.  Mr. Cordero suffered injuries at work which were documented medically and well known to the defendant USPS.

89.     Mr. Cordero's conditions are of permanent and progressive for which he receives prescriptions and other conditions which are long-term duration and significantly restricted his multiple major life activities, including but not limited to, the condition, manner and duration under which he can move, walk and interact with others, as compared to the ability of a person in the general population to perform these activities. In March of 2018, Plaintiff Cordero  is diagnosed with chronic plantar fasciitis, fibromyalgia, recurrent low back pain and major depression, which render him with a permanent physical disability.

90.    The USPS was well aware of Mr. Cordero's disabilities and had received numerous medical records certifying his conditions. The USPS was aware of Mr. Cordero's disabilities and had received numerous medical records certifying his conditions.

91.    The USPS, to discriminate, refused to consider many alternate accommodations that were not considered, such as a modified work schedule, more breaks, making changes in policies, and working as a regular unassigned carrier or temporary supervisor. Indeed, the City Carrier position specifically contemplated alternate accommodations.

92.    The USPS Supervisors, including Customer Services Hector Quinones, Manager of Customer Services Debbie Diaz, and the Puerto Rico Manager of Labor Relations, Beda Velazquez, have intentionally discriminated against him because of his disability by rejecting Mr. Cordero's repeated request for light duty accommodation and even rejecting that Plaintiff Cordero was a disabled individual under the law.

93.    The USPS also discriminated against Mr. Cordero by refusing to search for a vacant position in the USPS that Mr. Cordero could have performed.

94.    The USPS was aware of Mr. Cordero's medical limitations as it received numerous medical records certifying his conditions.

95.    Mr. Cordero requested reasonable job accommodations from the USPS for his medical limitations.

96.    The accommodations would have enabled him to perform his essential job functions.

97.    These accommodations did not create an undue burden for the USPS.

98.    The Rehabilitation Act imposes upon federal agencies an affirmative obligation to provide reasonable accommodations to disabled employees. The reasonable accommodations must be effective accommodations that reduce barriers to employment related to the employee's disability. The obligation of a federal agency employer to provide reasonable accommodations to a disabled employee applies to all aspects of the individual's employment and is an ongoing, continuing requirement.   Among other violations, Mr. Cordero was denied assistance when he requested it, his medical limitations were questioned and removed, he was humiliated and insulted by supervisors and his supervisor lied to injure Mr. Cordero.

99.    The USPS failed to reasonably accommodate Mr. Cordero's disabilities. The USPS failure to reasonably accommodate Mr. Cordero's disabilities constitutes a violation of the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* The USPS also failed to engage in a good faith, interactive process with Mr. Cordero concerning his requested accommodations.  Instead, through the management of the Loiza station, the Bayamon Branch Post Office, and the Caparra Heights Station,  the defendant USPS retaliated against Mr. Cordero with ridicule, harassment, and discrimination.

100.   Mr. Cordero also engaged in protected activity under the Rehabilitation Act of 1973.  In November of 2017 he filed on discrimination and harassment against the USPS with the Equal Employment Opportunity Commission.

101.   Mr. Cordero also engaged in protected activity through numerous requests he made to the USPS that the agency cease the discrimination and retaliation he was being subjected to.

102.   Mr. Cordero also engaged in protected activity through the requests he made for reasonable accommodations for his disabilities.

103.   Mr. Cordero had reasonable cause to believe that the conduct he complained of, violated Rehabilitation Act of 1973.

104.   The USPS subjected Mr. Cordero to multiple acts of intentional and malicious retaliation against Mr. Cordero due to his protected activity, including but not limited to, its relentless discipline of his and refusal to accommodate his disability and medical limitations.

105.   As the direct and proximate result of the USPS' breach of its legal obligations under the Rehabilitation Act, and failure to reasonably accommodate Plaintiff Cordero's disabilities and medical limitations, and retaliation, Plaintiff Cordero has suffered a loss of income and benefits, loss of future income and benefits, emotional and mental distress, lost employment opportunities, attorney fees and costs, and other damages.

106.   The USPS' denial of equal employment opportunities to Mr. Cordero, and failure to make reasonable accommodations to his disability and medical limitations, has caused, continues to cause, and will cause Mr. Cordero severe psychiatric harm and damages and pain and suffering and to suffer substantial damages for pecuniary losses, mental anguish, emotional distress, loss of enjoyment of life, and other non-pecuniary losses.

107. The USPS Committee unreasonably denied Plaintiff Mr. Cordero's request for accommodation based on the incorrect determination that he was not a qualified individual with a disability.

108. As explained above, Plaintiff Mr. Cordero has suffered damages in an amount not less than THREE HUNDRED THOUSAND DOLLARS ($300,000.00).

**D.   FOURTH CAUSE OF ACTION**
**DISABILITY DISCRIMINATION - HARASSMENT - - 29 U.S.C. § 791**

109. Mr. Cordero hereby incorporates each and every allegation set forth in paragraphs through 108, as though set forth in full herein.

110. Mr. Cordero is a qualified individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* He is also a person with a record of a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*

111. Mr. Cordero suffered disabilities as a direct result of working for the defendant USPS, including, but not limited to, chronic plantar fasciitis, fibromyalgia, recurrent low back pain, unilateral and peripheral neuropathy, CDL Strain/Myositis and major depression.

112. During the course of his employment with the USPS, Plaintiff Cordero was subject to hostile work environment harassment due to his disabilities and medical limitations.

113. The harassment consisted of humiliation, intimidation, abuse and even violence and the denial of reasonable requests including assistance or reasonable accommodation.

114.   The harassment against Mr. Cordero was severe and altered the conditions of his employment to create an intimidating and hostile work environment.  The USPS was aware of the harassment and failed to take prompt and appropriate remedial action to halt it.

115.   As a direct and proximate result of the USPS' harassment of Mr. Cordero due to his disabilities and medical limitations, Mr. Cordero suffered emotional and mental distress and the loss of his employment.

116.   As a direct and proximate result of the Postal Service's discrimination on the basis of his disability and medical limitations, Mr. Cordero has suffered a loss of income and benefits, loss of future income and benefits, emotional and mental distress, attorney fees and costs, and other damages.

117.   The USPS' creation of a hostile work environment and failure to take prompt and appropriate remedial action to halt the harassment, caused, continues to cause, and will cause Mr. Cordero severe psychiatric harm and damages and pain and suffering and to suffer damages for pecuniary losses, mental anguish, emotional distress, loss of enjoyment of life, and other non-pecuniary losses in an amount no less than one million dollars ($1,000,000.00).

118.   Plaintiff seeks compensation for such injuries in an amount no less than ONE MILLION DOLLARS ($1,000,000.00).

**E.   FIFTH CAUSE OF ACTION
DISCRIMINATION IN VIOLATION OF
THE AMERICANS WITH DISABILITIES ACT**

119.   Plaintiff Carlos Cordero hereby incorporates each and every allegation set forth in paragraphs 1 through 118, as though set forth in full herein.

120.   The Americans with Disabilities Act emphasizes that the definition of disability should be construed in favor of broad coverage of individuals to the maximum extent permitted by the terms of the ADA and generally shall not require extensive analysis.

121.   As specifically set forth in the paragraphs above, Plaintiff Carlos Cordero was discriminated by the USPS on the basis of disabilities (plantar faciitis, major depression fibromyalgia, recurrent low back pain, unilateral and peripheral neuropathy) in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq*.

122.   The Defendant USPS's conduct was willful and wanton entitling Plaintiff Cordero to punitive damages. Plaintiff is also entitled to reasonable attorney's fees and his costs of suit.

**VI.**   **JURY DEMAND**

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES AND CLAIMS.

**VII.**   **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Carlos A. Cordero respectfully requests an award of Damages in an amount not less than THREE MILLION DOLLARS ($3,000,000.00); back pay and for the loss of other benefits, currently estimated at more than $1,000,000.00 and expected to increase in the future; an award of pre-judgment interest, and an award of attorney's fees, and litigation costs; and such other relief as the Court deems just and proper.

In San Juan, Puerto Rico, this May 26, 2020.

 *s/ Carlos M. Sánchez*
Carlos M. Sánchez la Costa, Esq.

Attorney for Plaintiff Carlos A. Cordero Ayala
U.S.D.C. No. 209410
P.O. Box 9023027
San Juan, Puerto Rico 00902
Tel.: 787-729-4646
csanchez@sanchezlawpr.com