**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

CARLOS A. CORDERO AYALA,

     Plaintiff,

        v.                         CIVIL NO.: 20-1239 (MEL)

UNITED STATES POSTAL SERVICE, et al.

     Defendants.

**OPINION AND ORDER**

I.    **Procedural Background**

On October 5, 2020, Mr. Carlos A. Cordero Ayala ("Plaintiff") filed an amended complaint against the United States Postal Service and the Postmaster General of the United States Postal Service ("Defendants" or "USPS"). ECF No. 27. In the amended complaint, Plaintiff alleges that he was discriminated against on the basis of disability, subjected to a hostile work environment based on his disabilities and medical limitations, and retaliated against all under the Rehabilitation Act, 29 U.S.C. § 791, et seq. Id. On October 19, 2020, Defendants answered the amended complaint. ECF No. 31.

Pending before the court is Defendants' "motion to dismiss for lack of subject matter jurisdiction and for judgment on the pleadings." ECF No. 43. On March 1, 2021, Plaintiff filed a motion requesting that Defendants' motion to dismiss be held in abeyance until the completion of discovery. ECF No. 45. On March 2, 2021, Defendants filed a motion requesting that discovery be stayed until their motion to dismiss was ruled upon. ECF No. 46. On March 19, 2021, Plaintiff's request that the motion to dismiss be held in abeyance and Defendants' request that discovery be stayed were denied. ECF No. 59. Plaintiff was ordered to respond to

Defendants' motion to dismiss but the court determined that he "need not address in his response the argument that he cannot perform the essential functions of the job, as that contention will be addressed at the motion for summary judgment stage." Id. at 4. On March 30, 2021, Plaintiff filed a response in opposition to Defendants' motion to dismiss. ECF No. 70. Defendants filed a reply on June 18, 2021. ECF No. 113.

## II.    Legal Standard

Defendants argue that Plaintiff's claims in the amended complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"). ECF No. 43.

### A. Motion to Dismiss Standard under Rule 12(b)(1)

Pursuant to Rule 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Federal courts have limited jurisdiction and the party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. Droz-Serrano v. Caribbean Records Inc., 270 F. Supp. 2d 217, 217 (D.P.R. 2003) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). To determine if the burden has been met, the court "take[s] as true all well-pleaded facts in the plaintiffs' complaints, scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). The court, however, is not bound by the allegations in the pleadings and is permitted to consider materials outside the pleadings to determine jurisdiction on a Rule 12(b)(1) motion. See González v. United States, 284 F.3d 281, 288 (1st Cir. 2002). "When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise,

should ordinarily decide the 12(b)(1) motion first." <u>Northeast Erectors Ass'n v. Sec'y of Labor</u>, 62 F.3d 37, 39 (1st Cir. 1995).

### B. Motion for Judgment on the Pleadings Standard under Rule 12(c)

Pursuant to Federal Rule of Civil Procedure 12(h), a party may raise the defense of "failure to state a claim upon which relief can be granted" by a motion under Rule 12(c). <u>See</u> Fed.R.Civ.P. 12(h). Rule 12(c) provides "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "A motion under Rule 12(c) is treated much the same as a motion under Rule 12(b)(6)." <u>López v. Ortiz</u>, Civ. No. 13-1166, 2015 WL 1470566, at *5 (D.P.R. Mar. 31, 2015); <u>Asociación De Subscripción Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza</u>, 484 F.3d 1, 22 (1st Cir. 2007) ("The standard for evaluating a Rule 12(c) motion ... is essentially the same as that for deciding a Rule 12(b)(6) motion."). However, a "Rule 12(c) motion implicates the pleadings as a whole." <u>Curran v. Cousins</u>, 509 F.3d 36, 43 (1st Cir. 2007).

"[T]o survive a Rule 12(c) motion a complaint 'must contain factual allegations that raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" <u>MVM Inc. v. Rodríguez</u>, 568 F. Supp. 2d 158, 167 (D.P.R. 2008) (quoting <u>Pérez–Acevedo v. Rivero–Cubano</u>, 520 F.3d 26, 29 (1st Cir. 2008)). "In deciding a motion under Rule 12(c) for failure to state a claim, '[w]e view the facts contained in the pleadings in the light most flattering to the nonmovants ... and draw all reasonable inferences therefrom in their favor.'" <u>De-Jesús-Rivera v. Abbott Labs.</u>, Civ. No. 10-1144, 2010 WL 2737129, at *1 (D.P.R. 2010) (quoting <u>Aponte–Torres v. Univ. of Puerto Rico</u>, 445 F.3d 50, 54 (1st Cir. 2006)); <u>Torres-Santiago v. Diaz-Casiano</u>, 708 F. Supp. 2d 178, 179 (D.P.R. 2009) ("a court should accept well-pled factual allegations in the complaint as true and make all reasonable inferences in the

plaintiff's favor.") (citations omitted)). "But mere legal conclusions 'are not entitled to the assumption of truth.'" De-Jesús-Rivera, 2010 WL 2737129, at *1 (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). "The complaint must allege enough factual content to nudge a claim across the line from conceivable to plausible." Camilo v. Nieves, Civ. No. 10-2150, 2013 WL 6632801, at *6 (D.P.R. Dec. 16, 2013) (citing Ashcroft, 556 U.S. at 680).

"In reviewing a motion under Rule 12(c), as in reviewing a Rule 12(b)(6) motion, [the court] may consider 'documents the authenticity of which are not disputed by the parties; ... documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint.'" Curran, 509 F.3d at 44 (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)); Costas-Elena v. Mun. of San Juan, 714 F. Supp. 2d 263, 267 fn.3 (D.P.R. 2010).

### III.   Factual Allegations from the Amended Complaint and Documents Referred to in the Amended Complaint or Central to Plaintiff's Claims

#### A. Background Information

Plaintiff started working for USPS in 2001. ECF No. 27, at 3, ¶ 8. In April 2016, Plaintiff began working as a City Carrier at the Caparra Heights Station in San Juan, Puerto Rico. Id. at 3, 8, ¶¶ 9, 29. Plaintiff's supervisors were Mr. Héctor Quiñones ("Mr. Quiñones") and Ms. Debbie Díaz ("Mr. Díaz"). Id. at 8, ¶ 32. The duties of the City Carrier position include casing mail, preparing mail in sequence for delivery, handling undeliverable mail, delivering mail on a prescribed route, and depositing collected mail. Id. at 3, ¶ 10. The functional requirements of the City Carrier position include lifting up to seventy pounds, carrying forty-five pounds, straight pushing, reaching above the shoulder, using both hands, walking, standing, kneeling, repeated bending, and use of both legs. Id. at 3, ¶ 11. Plaintiff's job as a carrier required him to carry heavy parcels weighing up to seventy pounds, carry a satchel weighing up to thirty-five pounds, and bending and walking through obstacles. Id. at 11, ¶ 44.

**B. Medical Conditions**

In 2012, Plaintiff was diagnosed with plantar fasciitis which "flared from time to time because of prolonged standing, walking long distances, and carrying a heavy mailbag." ECF No. 27, at 6, ¶ 23. In 2015, Plaintiff was diagnosed with unilateral and peripheral neuropathy. Id. at 6, ¶ 24. In 2016, Plaintiff began experiencing sharp pain and burning in his feet and he was diagnosed with CDL Strain/Myositis. Plaintiff was also diagnosed with lumbar radiculopathy and peripheral neuropathy. Id. at 6-7, ¶¶ 25, 26. Plaintiff alleges that the workplace harassment at the USPS reached such levels that he contemplated suicide and suffered from major depression which required him to be hospitalized in 2017, 2018, and 2019. Id. at 8, 13, ¶¶ 31, 55.

On January 27, 2016, Plaintiff filed a claim for traumatic injury indicating that he sustained an injury at work when a dog bit his left foot while he was delivering mail. ECF No. 27, at 11-12, ¶ 48. In December 2016, Plaintiff began to suffer constant pain in his left calf which kept him out of his job for the entire month. Id. at 8, ¶ 30. In March 2017, Plaintiff was again diagnosed with plantar fasciitis and neuropathy and the doctor issued a certificate to USPS. Id. at 7, ¶ 27. Psychiatrist Dr. Raúl Benítez Pérez recommended that Plaintiff should rest from October 28, 2017 until March 31, 2018. Id. at 15, ¶ 64. In March 2018, Plaintiff was diagnosed with chronic plantar fasciitis, fibromyalgia, recurrent low back pain, and major depression which he alleges "render him with a permanent physical disability and basically unable to work." Id. at 17, ¶ 70. Plaintiff alleges that his medical conditions substantially limit his ability to walk and that he must use a cane or disabled cart for mobility. Id. at 9, 11, 13, ¶¶ 37, 46, 53. Plaintiff also alleges that he cannot stand for more than ten minutes at a time and cannot bend or lift anything over fifteen pounds. Id.

### D. Worker's Compensation Claim

On May 4, 2017, Plaintiff filed a claim for worker's compensation with the Office of Worker's Compensation Programs ("OWCP"). ECF No. 43-5. Plaintiff alleges that Mr. Quiñones improperly controverted his OWCP claim on May 26, 2017 and provided false statements against him.[1] ECF No. 27, at 23, ¶ 100. Plaintiff's OWCP claim was denied on August 2, 2017. ECF No. 43-6.

### E. Work Restrictions

In January 2017, Plaintiff requested light duty work. ECF No. 27, at 12, ¶ 49. A work restriction evaluation form – light duty, dated January 11, 2017, indicated that Plaintiff had the following restrictions: "(1) sitting and bending for 3 hours each per day; (2) walking, squatting, and standing for 2 hours each per day; (3) lifting, kneeling, and twisting for 1 hour each per day; (4) lifting up to 20 pounds; and (5) no climbing." Id. at 12, ¶ 50. A work restriction evaluation form – light duty, dated March 3, 2017, indicated that Plaintiff had the following restrictions: "(1) intermittent sitting, walking, lifting, bending, squatting, climbing, kneeling, twisting, and standing for up to 6 hours each per day; and (2) lifting up to 30 pounds." Id. at 12, ¶ 51. On March 24, 2017, Plaintiff continued on the same restrictions as the March 3, 2017 work restriction evaluation form. Id. at 12, ¶ 52.

On May 16, 2017, Plaintiff made an accommodation request for light duty with the following restrictions: "(1) intermittent standing and walking for 30 minutes; (2) lifting up to 35 pounds; and (3) work eight hours with intermittent standing, sitting, and walking." Id. at 13, 14,

---

[1] The amended complaint alleges that Mr. Quiñones controverted Plaintiff's OWCP claim on May 26, 2018. ECF No. 27, at 23, ¶ 100. However, Plaintiff's administrative charge with the EEOC reflects that Plaintiff complained therein that Mr. Quiñones controverted Plaintiff's OWCP claim on May 26, 2017. ECF No. 43-1. In view that Plaintiff's OWCP claim was denied on August 2, 2017, it follows that Mr. Quiñones could not have controverted said claim on May 26, 2018. See ECF No. 43-6.

¶¶ 57, 60. On July 12, 2017 and August 2, 2017, Plaintiff continued under the same work restrictions as the March 31, 2017 work evaluation form with the exception that he could perform the activities for up to 7 hours per day. Id. at 12, ¶ 52. On September 13, 2017, Plaintiff continued on the same restrictions with the exception that he could perform the activities up to 4 hours per day. Id. On November 10, 2017, Ms. Beda Velázquez ("Ms. Velázquez"), manager of labor relations, informed Plaintiff that his request for a light duty accommodation was denied because he was not a qualified individual with a disability within the meaning of the Rehabilitation Act. ECF No. 27, at 14, 15, ¶¶ 62, 63; ECF No. 43-3.

### F. Administrative Charge

On June 30, 2017, Plaintiff contacted an Equal Employment Opportunity Commission ("EEOC") counselor to complain that Mr. Quiñones controverted his OWCP claim before the Department of Labor and interfered with his request for light duty work. ECF No. 27, at 5, ¶ 17 n.1; ECF No. 43-2, at 4. On October 25, 2017, Plaintiff received the notice of right to file an administrative charge with the EEOC. ECF No. 27, at 5, ¶ 17 n.1; ECF No. 43-2, at 1. On October 27, 2017, Mr. Quiñones called Plaintiff "into the office and told him that he could not work due to his condition." ECF No. 27, at 14, ¶ 61. On November 4, 2017, Plaintiff filed a charge of discrimination with the EEOC. ECF No. 27, at 5, ¶ 17; ECF No. 43-1. Therein, Plaintiff complained that Mr. Quiñones

> sent a letter to the Federal Department of Labor insinuating that my conditions of neuropathy and plantar fasciitis [were] not real and recommended disapproval of my request to link my chronic pain in my feet to my activities as a letter carrier. Since I started in February 2016 in Caparra Height Station Post Office, I let him know about my treatments, therapies, and medical appointments. My supervisor is discriminating against me by my medical conditions of neuropathy and plantar fasciitis.

ECF No. 43-1. In the administrative charge, Plaintiff only checked the box alleging

discrimination on the basis of disability for neuropathy and plantar fasciitis. Id. As a remedy,

Plaintiff requested a "reasonable accommodation" and a refund of sick and annual leave hours

retroactively. Id.

On November 20, 2017, the EEOC sent Plaintiff a letter of "Partial Acceptance/Partial

Dismissal of Formal EEO Complaint." ECF No. 43-7, at 1. The letter indicated that Plaintiff had

submitted two claims in his administrative charge that he was subjected to disability

discrimination when Mr. Quiñones controverted his OWCP claim on May 26, 2017 and when his

request for light duty accommodation was not granted. Id. The letter informed Plaintiff that his

claim of disability discrimination pertaining to the denial of his light duty accommodation

request had been accepted for investigation. Id. at 2. However, Plaintiff was also informed that

his claim of disability discrimination regarding the controverting of his OWCP claim was

dismissed as a collateral attack on the proceedings in the Department of Labor. Id. at 2-4.

On November 24, 2017, Plaintiff went to the office of Mr. Juan Delgado

("Mr. Delgado"), human resources manager, seeking help in finding an accommodation.

Mr. Delgado told Plaintiff that his time at the USPS was over and that he should resign to obtain

social security disability. ECF No. 27, at 15, ¶¶ 65, 66, 67. Mr. Delgado told Plaintiff to write a

letter to the management of the Caparra Station resigning from his position. Id. at 15-16, ¶ 67.

"Plaintiff, desperate, with no income, was forced to write a letter dated February 9, 2018 to

[Mr. Delgado] requesting that [Mr. Delgado] write a letter to him separating him from the USPS

due to his disabilities. [Mr. Delgado] refused to help Plaintiff." Id. On February 26, 2018,

Plaintiff was notified by Mr. Quiñones and Postmaster Yvonne Rodríguez of his "termination

from the postal service effective March 31, 2018 for 'inability to perform the duties of your position.'" Id. at 16, ¶ 68; ECF No. 43-4.

On May 25, 2018, Plaintiff was issued a final decision from the EEOC informing that he failed to prove that the USPS discriminated against him. ECF No. 27, at 5, ¶ 18. On June 26, 2018, Plaintiff appealed the EEOC's decision. Id. By 2019, Plaintiff "was out of a job without any income to support his family and to take care of his basic necessities including housing. After being homeless, eventually, [Plaintiff] moved into his parents-in-law's house. [Plaintiff] went into a serious depression and tried to kill himself and was hospitalized . . . in August of 2019." Id. at 16, ¶ 69. Plaintiff lost his health insurance and is unable to afford treatment and medications that he needs. Id. at 16, ¶ 70.

On February 26, 2020, the EEOC vacated the final decision and remanded Plaintiff's case to the USPS. Id. at 5, ¶ 19. Plaintiff alleges that USPS was ordered to supplement the record with documentation regarding whether there were vacant positions that he was qualified to be reassigned to with or without reasonable accommodation, and to what extent USPS conducted a search for an equivalent vacant position to which it could have reassigned him. Id. at 4, ¶ 14. It is also alleged by Plaintiff that USPS was ordered to grant him an opportunity to address for the record whether he could have performed the essential functions of vacant positions with or without reasonable accommodation. Id. However, USPS did not conduct a supplemental investigation to determine what vacant positions were available to Plaintiff and did not provide him with any information about what jobs are vacant or will become vacant within a reasonable time. Id. at 4, 5, ¶¶ 15, 20. On May 26, 2020, Plaintiff filed the complaint in this case that was subsequently amended on October 5, 2020. ECF Nos. 1, 27.

### III.    Legal Analysis

Defendants make several arguments as to why Plaintiff's claims in the amended complaint should be dismissed. First, Defendants argue that there is no subject matter jurisdiction over Plaintiff's allegations that Mr. Quiñones controverted his OWCP claim with false statements. ECF No. 43, at 29-31. Defendants also argue that Plaintiff failed to exhaust his administrative remedies regarding certain claims of disability discrimination. Id. at 18-20. It is also contended by Defendants that Plaintiff did not exhaust his administrative remedies regarding his hostile work environment claims. Id. at 23-24. In the alternative, it is claimed by Defendants that Plaintiff's allegations in the amended complaint that he was subjected to a hostile work environment are conclusory. Id. at 24-29. Lastly, Defendants argue that Plaintiff's claims of retaliation were not administratively exhausted. Id. at 20-23.

### A. Whether subject matter jurisdiction exists over Plaintiff's allegations that Mr. Quiñones improperly controverted his OWCP claim

Defendants argue that Plaintiff's allegations that Mr. Quiñones improperly controverted his OWCP claim with false statements should be dismissed for lack of subject matter jurisdiction. ECF No. 43, at 29. The Federal Employees Compensation Act ("FECA") "provides the exclusive remedy against the federal government for employment-related injuries sustained by federal employees. If an injury falls within FECA's scope of coverage, then FECA is the exclusive remedy . . ." Rivera v. Dep't. of Veterans Admin. Affairs, Civ. No. 07-1660, 2008 WL 11357895, at *1 (D.P.R. July 29, 2008) (citing 5 U.S.C. § 8116(c)). The Secretary of Labor has the sole discretion to decide all questions arising under FECA and has delegated the "responsibility for administering FECA to the Director of the OWCP." Rivera, 2008 WL 11357895, at *1 (citing 5 U.S.C. § 8145); Singala v. United States, Civ. No. 05-1053, 2007 WL 2905260, at *7 (D.P.R. Sept. 20, 2007) (citing 5 U.S.C. § 8145).

10

"FECA provides, in pertinent part, that '[t]he action of the Secretary ... in allowing or denying a [FECA] payment ... is—(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a Court by mandamus or otherwise.'" Stone v. Chao, 284 F. Supp. 2d 241, 245 (D. Mass. 2003) (quoting 5 U.S.C. § 8128(b)); see Marshall v. Potter, Civ. No. 07-1625, 2009 WL 3200046, at *6 (D.P.R. Sept. 30, 2009) (explaining that "questions regarding compensation for federal disability are left to the Secretary of Labor/OWCP and not the courts.").

Defendants argue that subject matter jurisdiction is wanting over Plaintiff's claim that he was discriminated and retaliated against for requesting an accommodation when Mr. Quiñones controverted his OWCP claim with false statements. ECF No. 43, at 30-31. Defendants argue that this claim implicates the actual compensation decision made by the Department of Labor and constitutes an impermissible collateral attack on the OWCP process. Id. Plaintiff, on the other hand, contends that subject matter jurisdiction is present regarding his allegations that Mr. Quiñones wrongly controverted his OWCP claim because he is not asking the court to review the denial of said claim. ECF No. 70, at 19.

Although Plaintiff argues that he is not seeking review of the OWCP decision, any evaluation of the statements made by Mr. Quiñones would necessarily entail a review of the Department of Labor's decision. In order to establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show that "(1) he engaged in protected conduct, (2) he was subjected to an adverse action by the defendant, and (3) there was a causal connection between the protected conduct and the adverse action." Vergara v. Wesleyan Academy, Civ. No. 17-1013, 2019 WL 4199911, at *17 (D.P.R. Sept. 14, 2019) (quoting D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012)). Therefore, in determining whether Plaintiff met his prima facie

burden, the court would be required to assess whether the denial of OWCP benefits was an adverse action caused, at least in part, by Mr. Quiñones' statements which would require an analysis of whether Plaintiff was entitled to OWCP benefits in the first place.

An evaluation of the Department of Labor's determination of Plaintiff's OWCP claim is not subject to judicial review, and thus, the court is without subject matter jurisdiction over Plaintiff's allegations that Mr. Quiñones improperly controverted his OWCP claim. See Kyle v. Brennan, Civ. No. 17-5257, 2018 WL 3218447, at *2 (N.D. Ill. July 2, 2018) ("although [plaintiff] argues that a review of OWCP's benefits determination is unnecessary . . . any evaluation of [plaintiff's] retaliation claim would require this Court to determine whether he suffered an adverse employment action, which in turn would require the Court to assess whether he was entitled to benefits different from those OWCP awarded. In short, [plaintiff's] complaint necessitates an evaluation of OWCP's actions. Because FECA bars review of OWCP benefit awards, this Court lacks subject matter jurisdiction over [plaintiff's] claim."); Foulke v. Potter, Civ. No. 10-4061, 2011 WL 127119, at *2 (E.D.N.Y. Jan. 10, 2011) ("To the extent plaintiff alleges that the allegedly false statements by Linken and other officials, which she claims were motivated by discriminatory and/or retaliatory purposes, 'negative[ly] impact[ed]' her claim for workers' compensation benefits under [FECA], this Court is without subject matter jurisdiction over any such claim."); White v. Kilgore, Civ. No. 10-53, 2011 WL 144916, at *4 (E.D. Tenn. Jan. 18, 2011) (finding there was no subject matter jurisdiction over plaintiff's disability claims where "this Court would at least have to inquire into the merits of OWCP's decision to deny Mr. White's benefits in order to address Mr. White's allegations that Defendant failed to accommodate him by providing inaccurate information to OWCP and/or Defendant retaliated against him by performing such actions."); Lockett v. Potter, Civ. No. 06-1879, 2007 WL

496361, at *3 (N.D. Ohio Feb. 12, 2007) ("Clearly, plaintiff's claim herein is that defendant retaliated and discriminated against him by making false statements which caused the FECA claim to be denied. To prove this claim, the Court would have to review the Secretary of Labor's decision. This is prohibited by statute . . ."); Nicastro v. Runyon, 60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999) ("Judicial review of administrative decisions denying claims for work-related compensation is expressly precluded under [FECA]. Plaintiff cannot get around this rule by collaterally attacking a denial of FECA benefits as retaliatory."). But see Cabrera v. U.S. Dept. of Transport., 568 Fed. Appx. 805, 809-10 (11th Cir. 2014) (finding that the district court had subject matter jurisdiction over plaintiff's claims that defendant retaliated against him by providing inaccurate information to the OWCP because "there can be no conflict between [plaintiff's] Title VII action and his claim under [FECA]. Because the remedies under these separate laws are different, the district judge did not lack subject matter jurisdiction to adjudicate [plaintiff's] Title VII retaliation case.").

### B. Disability Discrimination Claims

Defendants argue that Plaintiff failed to exhaust administrative remedies as to several allegations of disability discrimination. Defendants specifically argue that "all claims of disability discrimination based on discrete acts for which Plaintiff did not seek counseling within the 45-day limitations period of the date of the matter alleged to be discriminatory must be dismissed." ECF No. 43, at 18-19. "[A] federal employee who brings an action under the Rehabilitation Act must exhaust administrative remedies before proceeding to court." Bartlett v. Dep't of the Treasury, 749 F.3d 1, 8 (1st Cir. 2014). "This requirement is derived from 29 U.S.C. § 794a(a)(1), providing that federal agency employees must exhaust administrative remedies in accordance with the requirements of Title VII." Hernández-Stella v. Shinseki, 978 F. Supp. 2d

105, 112 (D.P.R. 2013) (citing <u>Roman-Martínez v. Runyon</u>, 100 F.3d 213, 216 (1st Cir. 1996)).

"The purpose of the requirement 'is to provide the employer with prompt notice of the claim and

to create an opportunity for early conciliation.'" <u>Bangura v. Shulkin</u>, 334 F. Supp. 3d 443, 456

(D. Mass. 2018) (quoting <u>Fantini v. Salem State Coll.</u>, 557 F.3d 22, 26 (1st Cir. 2009)).

"The EEOC has issued a series of regulations concerning the proper procedure for

channeling a grievance through its administrative framework. The first step is informal

consultation, which must be initiated by the aggrieved employee within 45 days of the alleged

discriminatory action." <u>Rivera-Muñoz v. Shinseki</u>, 212 F. Supp. 3d 306, 310 (D.P.R. Mar. 15,

2016); 29 C.F.R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with a Counselor

within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel

action, within 45 days of the effective date of the action."). Failure to initiate contact with an

EEO counselor within 45 days of the allegedly discriminatory event "will result in the dismissal

of any such claims under the Rehabilitation Act." <u>Márquez v. Principi</u>, Civ. No. 06-1581, 2009

WL 414464, at *3 (D.P.R. Feb. 18, 2009); <u>Román–Martínez</u>, 100 F.3d at 216-18 (explaining that

failure to timely initiate contact with an EEO counselor entails waiver of court review).

In the case at hand, Defendants contend that Plaintiff did not seek EEOC counseling

within the 45-day period for the following incidents: (1) Mr. Quiñones telling Plaintiff on

October 27, 2017 that he cannot work; (2) Mr. Delgado's denial of Plaintiff's request for help in

securing an accommodation on November 24, 2017; and (3) Plaintiff's discharge on March 31,

2018. ECF No. 43, at 19-20.

"According to the Supreme Court, 'discrete discriminatory acts are not actionable if time

barred, even when they are related to acts alleged in timely filed charges. Each discrete

discriminatory act starts a new clock for filing charges alleging that act.'" <u>Rojas v. Principi</u>, 326

F. Supp. 2d 267, 274 (D.P.R. July 19, 2004) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)). "A discrete retaliatory or discriminatory act occurs on the day that it happened." Toledo-Colón v. Puerto Rico, 812 F. Supp. 2d 110, 121 (D.P.R. 2011). The Supreme Court has held that "[t]ermination, failure to promote, denial of transfer, [and] refusal to hire" constitute discrete acts which are instantaneously actionable. Morgan, 536 U.S. at 114. Furthermore, the First Circuit has found "that the denial of a reasonable accommodation, the failure to renew a contract, a change of supervisor, a relocation to another floor, a transfer to another office, and the failure to assign work to an employee also constitute discrete acts." Ayala v. Shinseki, 780 F.3d 52, 57 (1st Cir. 2015); see also Loubiel v. Fondo Del Seguro Del Estado, 772 F. Supp. 2d 367, 375 (D.P.R. 2011) ("Successive requests for the same accommodation, or flowing from the same violation, yield separate actionable claims.").

In the case at bar, Plaintiff contacted an EEOC counselor on June 30, 2017 and alleged that Mr. Quiñones controverted his worker's compensation claim before the Department of Labor and interfered with his request of an accommodation of light duty.[2] ECF No. 43-2. Plaintiff, however, has not cited to any allegations that he sought the mandatory EEO counseling within forty-five days of Mr. Quiñones statement on October 27, 2017 that he could not work, Mr. Delgado's refusal to help him secure an accommodation on November 24, 2017, or following his discharge on March 31, 2018. The failure to assign work, denial of an accommodation request, and termination constitute discrete acts which "starts a new clock for

---

[2] Plaintiff contends that Defendant's use of the EEOC Alternative Dispute Resolution's Specialist's Inquiry Report ("EEOC ADR Report") (ECF No. 43-2) is contrary to the Federal Rule of Evidence 408. ECF No. 70, at 9. Rule 408 provides that "a statement made during compromise negotiations about the claim" is "not admissible . . . either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed.R.Evid. 408. Plaintiff's contention is unfounded as the EEOC ADR Report is not being used to prove or disprove the validity or amount of Plaintiff's claim or to impeach him. Instead, the EEOC ADR Report is being offered to establish a timeline to determine which claims were administratively exhausted.

filing charges alleging that act." Lugo v. Avon Prod., Inc., 777 F. Supp. 2d 275, 287 (D.P.R. 2011); see also Morgan, 536 U.S. at 114; Ayala, 780 F.3d at 57.

The mere fact that Plaintiff initiated contact with an EEO counselor on June 30, 2017 did not obviate the requirement that he timely initiate contact with an EEO counselor for each subsequent discrete discriminatory act. Plaintiff's claim of disability discrimination regarding the denial of his request for an accommodation of light duty is the only one that has been administratively exhausted. Hence, Plaintiff's other claims of disability discrimination are DISMISSED WITH PREJUDICE.

### C. Hostile Work Environment Claims

Defendants argue that Plaintiff's hostile work environment claims under the Rehabilitation Act should be dismissed because they were not administratively exhausted. ECF No. 43, at 20-22. In the alternative, Defendants argue that Plaintiff's allegations in the amended complaint that he was subject to a hostile work environment are conclusory, and thus, must be dismissed. Id. at 24. "The purpose of filing an administrative charge as a prerequisite to commencing a civil action is to provide defendants 'with prompt notice of the claim and to create an opportunity for early conciliation.'" Rodríguez v. Henry Schein, Inc., 813 F. Supp. 2d 257, 262 (D.P.R. 2011) (quoting Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996)). "The scope of the civil complaint is accordingly limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 32 (1st Cir. 2009). "[T]he scope of a civil action is not determined by the specific language of the charge filed with the agency, but rather, may encompass acts of discrimination which the [agency] investigation could reasonably be expected to uncover." Id. "A claim may survive dismissal if the facts in the charge should have alerted the

agency of an alternative basis of discrimination, which should have been investigated,

'regardless of whether it was actually investigated.'" Rodríguez, 813 F. Supp. 2d at 263 (quoting

Davis v. Lucent Techs., Inc., 251 F.3d 227, 233 (1st Cir. 2001)). "[T]he critical question is

whether the claims set forth in the civil complaint come within the scope of the EEOC

investigation which can reasonably be expected to grow out of the charge of discrimination."

Fantini v. Salem State Coll., 557 F.3d 22, 27 (1st Cir. 2009) (citations omitted).

Defendants argue that Plaintiff's administrative charge was limited to a claim of

disability discrimination on the basis that USPS denied his request for an accommodation of light

duty and that Mr. Quiñones controverted his OWCP claim with false statements. ECF No. 43, at

20-22. Plaintiff, on the other hand, contends that Defendants omitted his EEOC affidavit that

shows he included allegations of hostile work environment at the administrative level. ECF No.

70, at 4. In his EEOC affidavit, Plaintiff complains that

> Since my first day at Caparra Height Station, on February 20, 2016, I told my
> supervisor [Mr. Quiñones] that due to the medical condition relating to my feet
> I need to go to medical appointments and therapies. I felt harassed and intimated
> [sic] by the supervisor and it caused my emotional and psychological damages
> to worsen, including the continuing objection to my claims for OWCP,
> including by his objection on May 2017 to my claim and his allegations that I
> abandoned work.

See ECF No. 70-1, at 3. Plaintiff also complains that he "felt harassed, humiliated, and

intimidated by the failure of the Postal Service to accommodate me in a light duty." Id. at 9.

To the extent that Plaintiff alleges that he was subjected to a hostile work environment

because Mr. Quiñones controverted his OWCP claim, this argument is without merit as the court

is without subject matter jurisdiction regarding said allegations as previously discussed. See, e.g.,

Foulke, 2011 WL 127119, at *2. In the November 20, 2017 EEOC letter titled "Partial

Acceptance/Partial Dismissal of Formal EEO Complaint," Plaintiff was forewarned that the

EEOC only understood that he raised two claims of disability discrimination: (1) Mr. Quiñones improperly controverted his OWCP claim with false statements and (2) that his request for an accommodation of light duty was denied. ECF No. 43-7, at 1. In said letter, Plaintiff was notified that only a portion of his claim had been accepted for investigation, that "[o]n unspecified date(s), [his] request for light duty accommodation was not granted." Id. at 2. The letter further notified that "[i]f you do not agree with the defined accepted issue(s), you must provide a written response specifying the nature of your disagreement within seven (7) calendar days of receipt of this letter . . ." Id.

Therefore, Plaintiff had a duty to object to the framing of his administrative charge. Yet, Plaintiff has not provided developed argumentation or cited to any allegations that he in fact objected to the EEO's framing of his claim. See Schroeder v. Brennan, Civ. No. 17-1301, 2017 WL 6622383, at *3 (D. Ariz. Dec. 4, 2017) ("Even assuming *arguendo* that Plaintiff intended her claim to be one of a hostile work environment, it would have been clear to her that USPS EEO did not so interpret her claim when she and her counsel received the letter of Partial Acceptance/Partial Dismissal of Formal EEO Complaint—a misinterpretation she was obligated to correct."); Sellers v. United States Dept. of Defense, Civ. No. 07–418, 2009 WL 559795, at *9 (D.R.I. Mar. 4, 2009) ("Plaintiff did not voice any disagreement with the issue as stated by the EEO. This failure to respond to the framing of the issue supports a finding that Plaintiff did not exhaust her administrative remedies with respect to the hostile work environment claim.").

Plaintiff did not include any allegations of hostile work environment in his administrative charge, nor can such allegations reasonably be expected to grow out of those contained in said charge. Hence, Plaintiff has not administratively exhausted his claim that he was subjected to a

hostile work environment.[3] See Labiosa-Herrera v. Puerto Rico Telephone Co., 153 F. Supp. 3d 541, 548 (D.P.R. 2016) (finding that plaintiff's hostile work environment claims should be dismissed where plaintiff did not include them in her EEOC complaint); Schroeder, 2017 WL 6622383, at *3 ("Plaintiff thus had clear notice the EEO office viewed her claim as something other than a hostile work environment claim in substance. Yet she did not inform EEO she disagreed with their framing or apprehension of what the claim or issue was. She therefore did not exhaust the claim with EEO.").

Alternatively, even assuming that Plaintiff had exhausted the administrative remedies concerning his hostile work environment claims, said claims cannot prosper because the amended complaint only includes conclusory allegations that he was subjected to a hostile work environment.[4] In order to succeed on a hostile work environment claim based on disability under the Rehabilitation Act, a plaintiff must show the following: "(1) that he was disabled under the Rehabilitation Act; (2) that he was subjected to uninvited harassment; (3) that his employer's conduct was based on his disability; (4) that the conduct was so severe or pervasive that it altered the conditions of his work and created an abusive work environment; and (5) the harassment was

---

[3] Plaintiff claims that Defendants' arguments that administrative remedies were not exhausted for his hostile work environment claim require the court to look outside the complaint which requires that the motion be converted to a summary judgment motion. ECF No. 70, at 16. Plaintiff's contention, however, overlooks the order dated March 19, 2021 that the pending motion need not be converted to a motion for summary judgment simply because it references EEOC documents. ECF No. 59, at 2-3.

[4] The amended complaint contains conclusory allegations that Plaintiff was subjected to a hostile work environment. See, e.g., ECF No. 27, at 7, ¶ 28 ("Due to the harassment and hostile work environment by the USPS management, Plaintiff Cordero was hospitalized . . ."); ECF No. 27, at 9, ¶ 35 ("Mr. Cordero never received any . . . disciplinary proceedings . . . until 2015 when he began to be harassed by his supervisor."); ECF No. 27, at 24-25, ¶ 108 ("The harassment consisted of humiliation, intimidation, abuse and even violence . . ."). The amended complaint includes an allegation that manager Mr. José Andújar told Plaintiff on February 10, 2016 that he was a problematic person trying to get attention and "even kick[ed] him out of the station building after violently taking away his punch out employment card." ECF No. 27, at 9, fn. 8. However, Plaintiff clarifies in the amended complaint that he "understands that some of this discriminatory conduct before 2017 is not actionable. But at this time it is offered as relevant background evidence . . ." ECF No. 27, at 7, fn. 7. Moreover, this allegation cannot sustain a hostile work environment claim because "offhand comments, and isolated incidents are not sufficient to create actionable harassment. . ." O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st Cir. 2001) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

objectively and subjectively offensive." <u>Rodríguez Alzugaray v. United States</u>, Civ. No. 11-1347, 2014 WL 1275964, at *9 (D.P.R. Mar. 27, 2014) (citing <u>McDonough v. Donahoe</u>, 673 F.3d 41 (1st Cir. 2012)). However, on a motion to dismiss, "in the employment discrimination context, it is not necessary for a plaintiff to plead facts supporting each element of a claim, provided that whatever facts are pled allow the Court to plausibly infer liability." <u>Ríos DaSilva v. One, Inc.</u>, F. Supp. 2d 148, 159 (D.P.R. 2013). "The elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." <u>Rodríguez–Reyes v. Molina–Rodríguez</u>, 711 F.3d 49, 54 (1st Cir. 2013); <u>Ríos DaSilva</u>, F. Supp. 2d at 159 ("While an employment discrimination plaintiff need not plead all the elements of a prima facie case to survive a motion to dismiss, she must nevertheless plead sufficient facts to show a plausible entitlement to relief.").

In the amended complaint, Plaintiff alleges that upon his return to work in January 2017, after a month-long leave of absence due to an injury, "the management of the Caparra Heights Station began a pattern of harassment and humiliation against Plaintiff." ECF No. 27, at 8, ¶ 30. Plaintiff also alleges that on October 27, 2017, Mr. Quiñones "called him into the office and told him that he could not work due to his condition." <u>Id.</u> at 14, ¶ 61. Yet, the amended complaint does not include further non-conclusory allegations regarding specific incidents that give rise to a plausible inference of liability under a hostile work environment theory. Instead, Plaintiff relies on conclusory statements in the amended complaint without detailing specific instances of harassment. <u>See</u> ECF No. 27, at 20-21, at ¶ 86 ("Defendant USPS by its action or inaction of its agents interfered with the terms and conditions of [Plaintiff's] employment and [Plaintiff's] performance in his job by subjecting [him] to a hostile environment based upon disability discrimination and retaliatory harassment."); <u>Id.</u> at 24, ¶ 107 ("During the course of his

employment with the USPS, Plaintiff . . . was subject to hostile work environment harassment due to his disabilities and medical limitations."); Id. at 24, ¶ 108 ("The harassment consisted of humiliation, intimidation, abuse and even violence and the denial of reasonable requests including assistance or reasonable accommodation and the intentional and unreasonable questioning of his legitimate request for OWCP medical relief."); Id. at 25, ¶ 109 ("The harassment against [Plaintiff] was severe and altered the conditions of his employment to create an intimidating and hostile work environment."); Id. at 19, ¶ 80 (Plaintiff "was denied assistance when he requested it, his medical limitations were questioned and removed, he was humiliated and insulted by supervisors and his supervisor lied to injure [Plaintiff].").

Plaintiff had knowledge of all the workplace incidents he experienced at the filing of the amended complaint on October 9, 2020, which was after his termination on March 31, 2018. The isolated incident mentioned by Plaintiff that his supervisor told him he could not work due to his condition is insufficient to suggest that his work environment was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of ... employment and create an abusive working environment." Ríos-Jiménez v. Principi, 520 F.3d 31, 43 (1st Cir. 2008) (quoting Quiles–Quiles v. Henderson, 439 F.3d 1, 7 (1st Cir. 2006)). Taken together, Plaintiff's allegations do not specify "what the harassment entailed, when it occurred and when [he] reported it, or who was responsible . . ., [his] allegations constitute a 'formulaic recitation' of the elements required of a hostile work environment claim, not a plausible showing that [he] was subjected to harassment." Strong v. Quest Diagnostics Clinical Lab., Inc., Civ. No. 19-4519, 2021 WL 354000, at *9 (N.D. Ill. Feb. 2, 2021). Therefore, even if Plaintiff exhausted the administrative remedies for his hostile work environment claims, the amended complaint does not include adequate non-conclusory allegations giving rise to a

plausible inference of liability on a hostile work environment theory. Thus, Plaintiff's hostile work environment claims under the Rehabilitation Act are DISMISSED WITH PREJUDICE.

### D. Retaliation Claims

Defendants argue that Plaintiff's retaliation claims under the Rehabilitation Act should be dismissed for failure to exhaust administrative remedies. ECF No. 43, at 20-21. In the November 4, 2017 administrative charge, Plaintiff did not include allegations pertaining to a claim of retaliation over which the court has subject matter jurisdiction, and none were accepted for investigation by the EEOC. ECF No. 43-1; ECF No. 43-7. Moreover, only the box "disability" was checked on the administrative charge even though retaliation was also listed as an option. ECF No. 43-1.

However, "[a] retaliation charge that is 'reasonably related to and grows out of the discrimination complained of to the agency' must be preserved despite the complainant's failure to exhaust administrative remedies prior to filing a complaint in federal court." Hernández-Stella v. Shinseki, 978 F. Supp. 2d 105, 112 (D.P.R. 2013) (citing Clockedile v. New Hampshire Dept. of Corrections, 245 F.3d 1, 6 (1st Cir. 2001)). "A claim of retaliation for filing an administrative charge with the EEOC is one of the narrow exceptions to the normal rule of exhaustion of administrative remedies. Such a claim may ordinarily be bootstrapped onto the other Title VII claim or claims arising out of the administrative charge and considered by the district court, even though it has not been put through the administrative process." Franceschi v. U.S. Dept. of Veterans Affairs, 514 F.3d 81, 86 (1st Cir. 2008); Clockedile, 245 F.3d at 6 ("retaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency—e.g., the retaliation is for filing the agency complaint itself."). Therefore, Plaintiff's claim that he was retaliated against for filing the

administrative charge on November 4, 2017 need not be dismissed for failure to exhaust administrative remedies.

Plaintiff, however, has not cited to any allegations that he exhausted the administrative process for any claims of retaliation not stemming from the November 4, 2017 administrative charge. See Rodríguez v. Henry Schein, Inc., 813 F. Supp. 2d 257, 263-64 (D.P.R. 2011) (explaining that a retaliatory act will not reasonably relate to an administrative charge where the act occurred before said charge). Accordingly, Plaintiff's claims of retaliation not arising from the November 4, 2017 administrative charge are DISMISSED WITH PREJUDICE.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss and motion for judgment on the pleadings (ECF No. 43) IS GRANTED IN PART AND DENIED IN PART. Plaintiff's claims that he was discriminated, harassed, and retaliated against when Mr. Quiñones allegedly controverted his OWCP claim with false statements are DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction. Regarding Plaintiff's claims of disability discrimination under the Rehabilitation Act, Plaintiff has only exhausted the administrative process as to his claim that he was discriminated against when his request for an accommodation of light duty was denied, and accordingly, his other claims of disability discrimination are DISMISSED WITH PREJUJDICE. Plaintiff's hostile work environment claims pursuant to the Rehabilitation Act are also DISMISSED WITH PREJUDICE. Defendants' request that Plaintiff's retaliation claims under the Rehabilitation Act be dismissed is GRANTED IN PART AND DENIED IN PART. Plaintiff's claims of retaliation not arising from the November 4, 2017 administrative charge are DISMISSED WITH PREJUDICE. Any retaliation claims arising from the November 4, 2017 administrative charge, however, remain.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 20th day of September, 2021.

s/Marcos E. López
U.S. Magistrate Judge