**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

CARLOS A. CORDERO AYALA,

    Plaintiff,

        v.

UNITED STATES POSTAL SERVICE, et al.

    Defendants.

CIVIL NO.: 20-1239 (MEL)

**OPINION & ORDER**

## I. INTRODUCTION

Pending before the court is a motion for summary judgment by the United States Postal Service ("USPS") and the Postmaster General of the United States Postal Service (collectively, "Defendants"), arguing that Mr. Carlos A. Cordero Ayala's ("Plaintiff") claims for disability discrimination and retaliation lack merit and are therefore insufficient to survive its motion for summary judgment. ECF No. 179; ECF No. 183 at 4. Plaintiff opposed said motion, and Defendants filed a reply to said opposition. ECF Nos. 200, 225. For the reasons detailed below, Defendants' motion for summary judgment is GRANTED.

On October 5, 2020, Plaintiff filed an amended complaint against Defendants. ECF No. 27. In the amended complaint, Plaintiff alleges that he was discriminated against on the basis of disability, subjected to a hostile work environment based on his disabilities and medical limitations, and retaliated against all under the Rehabilitation Act. 29 U.S.C. § 791, *et seq*.; ECF No. 27. On September 20, 2021, the court ruled on Defendants' motion to dismiss for lack of subject matter jurisdiction and for judgment on the pleadings (ECF No. 43) and dismissed several of Plaintiff's claims. ECF No. 152.

First, Plaintiff's claims that he was discriminated, harassed, and retaliated against when Mr. Héctor Quiñones ("Mr. Quiñones") allegedly controverted his Office of Worker's Compensation Programs ("OWCP") claim with false statements were dismissed for lack of subject matter jurisdiction. ECF No. 152 at 12. Second, all claims of disability discrimination under the Rehabilitation Act but for the claim that he was discriminated against when his request for an accommodation of light duty was denied were dismissed for failure to exhaust the administrative process. ECF No. 152 at 16. Third, Plaintiff's hostile work environment claims pursuant to the Rehabilitation Act were also dismissed. ECF No. 152 at 21–22. Finally, all retaliation claims not arising from the November 4, 2017, Equal Employment Opportunity ("EEO") administrative charge were dismissed. *Id.* The only claims remaining outstanding before the court are Plaintiff's Rehabilitation Act claims based on disability discrimination related to the denial of his reasonable accommodation on November 10, 2017, and retaliation arising from his November 4, 2017, EEO charge. ECF No. 152 at 23.

## II.    LEGAL STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011) (quoting *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp.*, 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, the party cannot merely "rely on an absence of competent evidence, but must affirmatively point to specific facts [in the record] that demonstrate the existence of an authentic dispute." *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995) (citation omitted). The party need not, however, "rely only on *uncontradicted* evidence . . . . So long as the [party]'s evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (citation omitted).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan*, 904 F.2d at 115. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. P. R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

### III.    MATERIAL FACTS NOT IN CONTROVERSY

#### A. Plaintiff's Background Before 2017

Plaintiff was born in April of 1978, graduated from high school in 1996, and subsequently obtained a degree as a draftsman. ECF No. 180 at 1, ¶¶ 1–2; ECF No. 198 at 1, ¶¶ 1–2. Thereafter, Plaintiff worked as a draftsman, which was a desk job, for approximately a year and a half. ECF No. 180 at 1, ¶ 3; ECF No. 198 at 1, ¶ 3. Plaintiff started working for USPS in 2001 as a letter carrier.[1] ECF No. 180 at 2, ¶ 6; ECF No. 198 at 2, ¶ 6. He was also a union member since 2001. ECF No. 180 at 5, ¶ 18; ECF No. 198 at 7, ¶ 18.

The mail carrier job, Plaintiff's position, is a very physical job. ECF No. 180 at 2, ¶ 8; ECF No. 198 at 3, ¶ 8. Plaintiff's employment-related duties, which he performed for 5 days a week in 8–12-hour days, included walking and standing for long periods of time with limited opportunity to rest, as well as pushing and pulling heavy equipment. ECF No. 180 at 3, ¶¶ 9–10; ECF No. 198 at 4, ¶¶ 9–10. By 2015, Plaintiff felt pain in his feet that continued progressing, and beginning in 2016, the pain was extreme. ECF No. 180 at 2, 8, ¶¶ 5, 44; ECF No. 198 at 2, 10, ¶¶ 5, 44.

Plaintiff began to work at the Caparra Heights Post Office in 2016 under the supervision of Mr. Quiñones, his immediate supervisor, and Ms. Debbie Díaz, the manager at the Caparra Heights Post Office. ECF No. 180 at 9, ¶¶ 47–49; ECF No. 198 at 10, ¶¶ 47–49. As a mail carrier at the Caparra Heights Post Office, Plaintiff spent most of the days on the street doing deliveries: he had to walk approximately 11 miles per workday to complete his route. ECF No. 180 at 8–9, ¶¶ 45, 54; ECF No. 198 at 10, ¶¶ 45, 54. In December of 2016, Plaintiff went to the emergency

---

[1] The parties appear to use the terms "city carrier," "letter carrier," "city letter carrier," and "mail carrier" interchangeably. *See generally* ECF Nos. 180, 198. Moreover, neither party suggest that any of these positions are distinct.

room because he had a very strong cramp in his left calf. ECF No. 180 at 10, ¶ 58; ECF No. 198 at 11, ¶ 58.

### B. Events in 2017 and Afterwards

On January 11, 2017, and January 27, 2017, Plaintiff wrote letters to USPS management requesting "light duty." ECF No. 180 at 10, ¶ 60; ECF No. 198 at 11, ¶ 60. In the January 11, 2017, letter Plaintiff noted that he was "requesting 'light duty' due to [his] recent condition."[2] ECF No. 181-12 at 7. Plaintiff applied for light duty by explaining the situation to his supervisor, who gave him a form to take to a physician to fill out with the physician's recommendations. He would then return said form to his immediate supervisor. ECF No. 180 at 13, ¶ 72; ECF No. 198 at 15, ¶ 72. Pursuant to USPS regulations, Plaintiff had to provide that form every 30 days for his light duty work request to be approved. ECF No. 180 at 13, ¶ 73; ECF No. 181-2 at 43–44. A document titled "Work Restriction Evaluation Form - Light Duty" (hereinafter, Work Restriction form"), dated January of 2017 indicated that Plaintiff had the following restrictions: (1) sitting and bending for 3 hours each per day; (2) walking, squatting, and standing for 2 hours each per day; (3) lifting, kneeling, and twisting for 1 hour each per day; (4) lifting up to 20 pounds; and (5) no climbing. ECF No. 180 at 14, ¶ 80, ECF No. 198 at 17, ¶ 80.

On January 27, 2017, Ms. Debbie Díaz sent Plaintiff a letter acknowledging his restrictions based on the medical documentation he submitted and approved Plaintiff's light duty request.[3] ECF No. 180 at 14, ¶ 78, ECF No. 198 at 17, ¶ 78. Ms. Debbie Díaz's letter advised Plaintiff that (1) light duty requests are approved on a day-to-day basis for a period of 30 days; (2) every 30 calendar days (i.e., monthly) Plaintiff needed to resubmit the written request of light

---

[2] Plaintiff's deposition testimony clarifies that his "recent condition" was the cramp he experienced in December of 2016. ECF No. 181-2 at 41, ¶¶ 18–21.
[3] Ms. Debbie Díaz sent identical letters acknowledging and approving Plaintiff's light duty requests on March 27, 2017, and August 16, 2017. ECF No. 180 at 14, ¶ 78, ECF No. 198 at 17, ¶ 78.

duty, including any documentation of any changes; (3) he could perform work based on his

submitted medical documentation and such work could be either casing and/or delivering mail

based on the operational needs of the unit, but that there was no guarantee of 8 hours of work on

a daily basis; and (4) he could not violate any of the limitations set by his physician and that

failure to do so could result in termination of the agreement and/or disciplinary action. ECF No.

180 at 16–17, ¶¶ 90–92; ECF No. 198 at 19, ¶ 90–92.

Another Work Restriction form, dated March 3, 2017, indicated Plaintiff had the

following restrictions: (1) intermittent sitting, walking, lifting, bending, squatting, climbing,

kneeling, twisting, and standing for up to 6 hours each per day; and (2) lifting up to 30 pounds.[4]

ECF No. 180 at 15, ¶ 81, ECF No. 198 at 17, ¶ 81. On March 31, 2017, Ms. Debbie Díaz went

on a detail to the district office and returned to the Caparra Heights Post Office in August of

2017; hence, Mr. Quiñones was acting manager and addressed Plaintiff's requests for light duty

accommodation during her detail. ECF No. 180 at 13, ¶ 75; ECF No. 181-15 at 3, ¶ 13. On or

about March 23, 2017, Plaintiff wrote a letter stating the following:

> I hereby inform that due to my constant foot pain[,] I am unable to continue with
> my daily responsibilities as a letter carrier. My job as a letter carrier demands me
> to stand for a period of at least 8 hours every day. At the moment, I am working 6
> hours a day and, once I finish my limited shift, I end up with excruciating pain on
> both feet.
>           . . . .
> My wish is to continue working because I am young[,] and I feel I am capable of
> performing different tasks in the Postal Service.

ECF No. 182-4 at 1.

---

[4] Subsequent Work Restriction forms note Plaintiff's restrictions throughout the remainder of 2017: The form for
April and June 2017 included the same restrictions as previous requests. ECF No. 180 at 15, ¶ 82; ECF No. 198 at
17, ¶ 82. The Work Restriction form for July and August of 2017 included the same restrictions as previous forms,
with the exception of a change to up to 7 hours per day. ECF No. 180 at 15, ¶ 83; ECF No. 198 at 18, ¶ 83. The
Work Restriction form dated September 2017 reduced the amount of time he could perform certain functions and
indicated Plaintiff had the following restrictions: (1) intermittent sitting, walking, lifting, bending, squatting,
climbing, kneeling, twisting, and standing for up to 4 hours each per day; and (2) lifting up to 30 pounds. ECF No.
180 at 16, ¶ 88; ECF No. 198 at 18, ¶ 88.

Plaintiff requested an accommodation in writing on May 16, 2017. ECF No. 180 at 19, ¶ 105; ECF No. 181-12 at 4. The accommodation requested by Plaintiff states—under the section titled "Accommodation Requested"—that he has a "progressive disease" and has limitations, such as 30 minutes standing and walking, lifting up to 35 pounds, and work up to 8 hours with intermittent "sit, walk, stand." Plaintiff also stated therein that the degree of limitation to the major life activities of walking, standing and lifting was "severe." ECF No. 180 at 19, ¶ 106; ECF No. 198 at 22, ¶ 106; ECF No. 181-12 at 4. Afterwards, Mr. Quiñones referred Plaintiff's request for a reasonable accommodation to the labor relations department; however, it was not received by the labor relations department until August 2, 2017. ECF No. 180 at 19, ¶ 104; ECF No. 181-22 at 3; ECF No. 198-24 at 15, ¶¶ 18–22. On July 17, 2017, Plaintiff submitted to "Pre-Complaint Counseling" with the USPS Equal Employment Opportunity Office, listing "physical disability" as the discrimination factor of his complaint. ECF No. 180 at 40, ¶ 219; ECF No. 181-28 at 1.

On August 2, 2017, Beda Velázquez ("Ms. Velázquez"), the then District Reasonable Accommodation Committee ("DRAC") Chairperson and Labor Relations Manager, sent Plaintiff a letter notifying him that the DRAC would meet with him on August 8, 2017, to discuss his accommodation request and asking that he bring new and updated medical information. The letter also states that Plaintiff should be prepared to discuss his medical condition, his limitations, and the accommodations he believed were appropriate and reasonable. The letter also states that at his option, Plaintiff could be accompanied by a union representative. ECF No. 180 at 27, ¶ 146; ECF No. 198 at 32, ¶ 146. USPS's DRAC is a multi-functional task force (committee) to assist management in determining eligibility for reasonable accommodation. The committee evaluates the essential functions of a given position and explores the availability and feasibility

7

of potential accommodations. The DRAC meets with the employee or applicant, consults with the affected management, and submits its findings and recommendations to management. ECF No. 180 at 27, ¶¶ 147–48; ECF No. 198 at 32, ¶¶ 147–48.

Plaintiff met with the DRAC on August 8, 2017. ECF No. 180 at 28, ¶ 151; ECF No. 198 at 33, ¶ 151. Also present at Plaintiff's DRAC meeting on August 8, 2017, were DRAC members Ms. Velázquez; Ms. María Díaz, the then USPS Caribbean District's Occupational Health Nurse; Mr. Carlos Pérez (Human Resources); and Mr. Quiñones. ECF No. 180 at 18, 28, ¶¶ 99, 152; ECF No. 198 at 21, 33, ¶¶ 99, 152. During the DRAC meeting, Plaintiff stated the following: (1) his request for his route was to have him sitting in a vehicle delivering mail; (2) he was willing to perform any mail carrier job as long as they would accommodate him and help him with the treatments that he was having at that time due to his conditions; (3) he had previously requested the 204b supervisor position; and (4) he requested the marketing position he once occupied (Customer Connect). ECF No. 180 at 29–31, ¶¶ 158, 163, 165, 170; ECF No. 198 at 34–36, ¶¶ 158, 163, 165, 170.

Additionally, at the DRAC meeting, Ms. Velázquez asked Plaintiff if he had bid for another position in the metropolitan area and he said no. ECF No. 180 at 30, ¶ 163; ECF No. 181-11 at 13, ¶¶ 16–24. Moreover, the DRAC notified Plaintiff that it did not have authority to create a customer connect position within USPS and that there were no vacancies available for him to be transferred to because at the moment, all the positions (even the clerical positions and distribution clerk positions that were closed at that time) require working standing up. In other words, no vacancies to which Plaintiff could be accommodated existed. ECF No. 180 at 31–32, ¶¶ 170–174; ECF No. 181-2 at 56, ¶¶ 6–17; ECF No. 181-7 at 14. The DRAC also recommended

Plaintiff to retire due to disability or do a change of craft. ECF No. 180 at 34, ¶ 182; ECF No. 198 at 39, ¶ 182.

On October 5, 2017, Plaintiff submitted a request for leave under the FMLA signed by Dr. Fernando Cabrera, in which the physician wrote, among other things: (1) that Plaintiff could not stand for more than 20-30 minutes or walk long distances, (2) that his period of incapacity was from 9/5/17 to 9/5/18, and (3) that Plaintiff needed to continue "psychopharmaco" therapy regularly, which included medications to sleep and for anxiety and depression. ECF No. 180 at 35, ¶ 189; ECF No. 198 at 40, ¶ 189. According to Plaintiff, on or around October 27, 2017, his supervisor, Mr. Quiñones, told him that he could not work because of his conditions. ECF No. 180 at 36, ¶ 190; ECF No. 27 at ¶ 61; ECF No. 181-10 at 43. Plaintiff accepted Mr. Quiñones's statement, but later went to see a psychiatrist when he thought about his poor finances and financial obligations. ECF No. 180 at 36, ¶ 191; ECF No. 181-10 at 43. Plaintiff stopped working on October 28, 2017. ECF No. 180 at 36, ¶ 192; ECF No. 181-10 at 34.

Plaintiff filed a EEO Charge of Discrimination on November 4, 2017, claiming disability discrimination on the basis of physical conditions (neuropathy, plantar fasciitis). ECF No. 180 at 41, ¶ 220; ECF No. 181-12 at 1. On November 10, 2017, Ms. Velázquez sent Plaintiff a letter rejecting his request for a reasonable accommodation. ECF No. 180 at 37, ¶ 197; ECF No. 198 at 41, ¶ 197. The letter from Ms. Velázquez states that (1) Plaintiff requested to be placed back in the Customer Connect program, a marketing detail, he had before; (2) Plaintiff's restrictions did not permit him to meet the job requirements of lifting, reaching, bending, carrying and walking, and no reasonable accommodation would enable him to perform those functions; (3) the accommodation he requested would eliminate an essential function of his job; and (4) efforts during interactive meetings with representatives from the Health Unit, Safety Office and Human

Resources, as well as other alternatives explored were unsuccessful. ECF No. 180 at 37–38, ¶¶ 198–201; ECF No. 198 at 41–42, ¶¶ 198–201.

The letter rejecting Plaintiff's request for reasonable accommodation states that Plaintiff could make a written request for reconsideration within 10 business days to Mr. Juan Delgado ("Mr. Delgado"), the Human Resources Manager who reviews the decisions of the DRAC. Plaintiff opted to communicate with Mr. Delgado directly. ECF No. 180 at 38, ¶¶ 202–03; *see also* ECF No. 181-2 at 60 (showing that after Plaintiff was asked if he made "a written request to [Mr.] Delgado, like the letter states," Plaintiff stated that he "communicated directly with" Mr. Delgado), ¶¶ 11–20; ECF No. 198 at 42, ¶ 202. In November of 2017, Plaintiff, claiming he could not continue working, met with Mr. Delgado. ECF No. 180 at 39, ¶ 213; ECF No. 181-20 at 5–6; ECF No. 180 at 38, ¶ 207; ECF No. 196 at 43, ¶ 207.  During this meeting, John Kennedy Rivera ("Mr. Rivera"), President of the National Association of Letter Carriers in Puerto Rico (Plaintiff's union), was also present. ECF No. 180 at 38, ¶ 207; ECF No. 196 at 43, ¶ 207. During this meeting, Mr. Rivera and Mr. Delgado advised Plaintiff that he could apply for a separation due to disability or "disability retirement," which was one of his options at the time. ECF No. 180 at 39, ¶ 209; ECF No. 181-9 at 3, ¶ 18. Additionally, Plaintiff told Mr. Delgado that "recently he had to use the cane in order to stand up - - in order to be standing up." ECF No. 181-2 at 63, ¶¶ 13–14; ECF No. 180 at 40, ¶ 215; ECF No. 198 at 44, ¶ 215. 218. After Plaintiff asked Mr. Delgado how he could apply for Social Security benefits, Mr. Delgado explained to him how to do it. ECF No. 180 at 40, ¶ 218; ECF No. 181-2 at 64, ¶¶ 21–23.

On December 4, 2017, Mr. Quiñones sent Plaintiff a letter stating that Plaintiff had been absent from work since October 28, 2017, and that there was no medical evidence to support his prolonged absence. The letter further states that Plaintiff was required to submit a medical

certification or other evidence to justify his absence. ECF No. 180 at 36, ¶ 194; ECF No. 181-5 at 167. In response, Plaintiff provided a medical certificate stating that he had an appointment on December 21, 2017, and recommending that he rest from October 28, 2017, through March 31, 2018. ECF No. 180 at 36, ¶ 195; ECF No. 198 at 40, ¶ 195.

On January 10, 2018, Plaintiff wrote a letter addressed to management at the Caparra Heights Post Office stating that "I want to request a letter of separation by disability. Now I'm in the process of disability[, and] the doctors are asking me for a letter direct[ly] from USPS because of [a] lot of fraud by employees." ECF No. 180 at 42, ¶ 228; ECF No. 226-17 at 1. On February 9, 2018, Plaintiff addressed a letter to Mr. Delgado requesting a letter of job separation due to disability and stating he was unable to continue his work as a city letter carrier because his physical condition prevented it. ECF No. 180 at 42, ¶ 229; ECF No. 181-5 at 144. On February 12, 2018, Plaintiff wrote and signed a letter in his own handwriting addressed to Mr. Delgado stating that, among other things, Plaintiff had made the decision to apply for retirement through the Office of Personnel Management ("OPM"), making reference to his physical conditions and thanking Mr. Delgado for his help. ECF No. 180 at 42, ¶ 230; ECF No. 182-7 at 1.

On February 26, 2018, USPS sent Plaintiff a "Notice of Separation Disability" informing him of his separation from the postal service effective March 31, 2018, and stating that the reason for the personnel action was his "inability to perform the duties of [his] position" as a letter carrier. The notice also stated that Plaintiff "ha[d] been absent from work since December 27, 2016." ECF No. 198 at 47, ¶ 231; ECF No. 198-7 at 1. After his separation from his employment at USPS, Plaintiff did not look for a job. ECF No. 180 at 43, ¶ 235; ECF No. 198 at 48, ¶ 235. On May 25, 2018, USPS issued a final decision regarding Plaintiff's EEO complaint concluding that Plaintiff failed to prove that USPS subjected him to discrimination. ECF No.

198-39 at 1, 3. Plaintiff appealed said decision with the Equal Employment Opportunity Commission ("EEOC") on June 26, 2018. ECF No. 198-39 at 1. On February 26, 2020, the EEOC vacated USPS's final decision and remanded the complaint for further processing, ordering USPS to supplement the record with, among other things, evidence showing whether there were vacant positions that Plaintiff could have been reassigned to. ECF No. 198-39 at 1, 6.

### C. Plaintiff's Application for Social Security Disability Insurance Disability Benefits

Plaintiff applied for Social Security Disability Insurance ("SSDI") benefits on January 25, 2018. The application notes that because of his condition, he was unable to work since October 29, 2017. ECF No. 180 at 43, ¶ 236; *E.g.*, ECF No. 181-10 at 6–7. Plaintiff represented to the Social Security Administration ("SSA") that he was limited in his ability to work because of all of his physical and mental conditions, which include fibromyalgia, plantar fasciitis, neuropathy, insomnia, depression, anxiety, panic attacks, nervousness, and arthritis. ECF No. 180 at 43, ¶ 237; ECF No. 181-10 at 34; ECF No. 181-2 at 68, ¶¶ 3–4. On September 30, 2019, an SSA Administrative Law Judge determined that "[b]ased on the application for a period of disability and disability insurance benefits protectively filed on January 25, 2018, the claimant has been disabled . . . since October 29, 2017." ECF No. 180 at 44, ¶ 239; ECF No. 198 at 48, ¶ 239. As a result, Plaintiff receives more than $2,600 in SSDI gross monthly payments. ECF No. 180 at 44, ¶ 240; ECF No. 198 at 48, ¶ 240.

### D. Plaintiff's Federal Employees Retirement System Disability Retirement Application

Plaintiff filed an application for disability retirement under the Federal Employees Retirement System ("FERS") stating: (1) that at the time he was in "leave without pay status," (2) that due to his conditions, he could no longer sit, walk, lift, bend, squat, climb, kneel, stand for long periods, (3) that he has to be assisted with a cane or a wheelchair for his daily activities,

(4) that his medications render him unable to do normal everyday activities, and (5) that he became disabled for his position on October 28, 2017.[5] The application certifies he requested accommodations "per medical recommendations," but USPS was unable to grant his request. ECF No. 180 at 44–45, ¶ 243; ECF No. 181-30 at 10–11. The FERS application is first signed by Plaintiff on May 21, 2018, and is certified under penalty of perjury. Directly below said date is another written date: March 2019.[6] ECF No. 180 at 45, ¶ 244; ECF No. 181-30 at 11.

On May 8, 2019, Plaintiff wrote a letter to OPM regarding his application for disability insurance payments stating that his pains were becoming more severe and asking the agency to "help [him] retire as soon as possible." ECF No. 180 at 45, ¶ 247; ECF No. 198 at 50, ¶ 247. On September 9, 2019, OPM sent Plaintiff a letter finding him to be disabled for his position as a mail carrier and approving Plaintiff's application for disability retirement under FERS. ECF No. 180 at 46, ¶ 249; ECF No. 198 at 50, ¶ 249. Plaintiff receives monthly payments of more than $780 from FERS as a result of his separation due to disability from USPS. ECF No. 180 at 46, ¶ 251; ECF No. 198 at 50, ¶ 251.

## IV.    ANALYSIS

Defendants move for summary judgment on Plaintiff's disability discrimination claim related to his denial of reasonable accommodation on November 10, 2017, arguing that, among other things, Plaintiff was unable to perform the essential functions of his mail carrier position and that no reasonable accommodation existed for USPS to offer. ECF No. 183 at 3. Likewise, Defendants argue that, among other things, Plaintiff's claims for retaliation originating from his

---

[5] It is unclear why Plaintiff represented to the SSA that he was disabled as of October 29, 2017, but represented to OPM that he was disabled as of October 28, 2017.
[6] The exact day is illegible. ECF No. 181-30 at 11.

EEO complaint on November 4, 2017, fail because Plaintiff cannot prove that his protected activity caused any alleged adverse action thereafter. ECF No. 183 at 4.

Because the undisputed facts show that Plaintiff applied for disability benefits and represented to two federal agencies that he could no longer perform his duties at USPS as of October 2017,[7] his claim of discrimination based on the denial of his reasonable accommodation request on November 10, 2017, must be dismissed. Additionally, Plaintiff's claims of retaliation must also be dismissed because Plaintiff has failed to point to evidence for a reasonable jury to conclude that the denial of reasonable accommodation was retaliatory and that the EEO Complaint made on November 4, 2017, was the but-for cause to his notice of separation based on disability dated February 26, 2018.[8]

## A. Whether Plaintiff's disability discrimination claim must be dismissed as a matter of law.

Defendants make several assertions challenging that Plaintiff has failed to provide sufficient evidence to meet the elements for a prima facie case for disability discrimination under the Rehabilitation Act. *See, e.g.*, 183 at 3. The Rehabilitation Act provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity . . . conducted by . . . the United States Postal Service." 29 U.S.C. § 794(a). Thus, to show disability discrimination under the Rehabilitation Act, a plaintiff must point to evidence demonstrating (1) that he is disabled within the meaning of the act; (2) that he was a qualified individual, able to perform the

---

[7] Plaintiff alleged disability as of October 29, 2017, in his SSID disability benefits application, yet afterward he alleged disability as of October 28, 2017, in his FERS disability benefits application. ECF No. 181-10 at 20; ECF No. 181-30 at 10.

[8] Plaintiff is entitled to a jury trial on his claims seeking monetary damages under the Rehabilitation Act. *See e.g.*, *Panzardi-Santiago v. Univ. of Puerto Rico*, 200 F. Supp. 2d 1, 23 (D.P.R. 2002) ("[A] jury trial is available to [the plaintiff] for her Rehabilitation Act claim as she alleges intentional discrimination and seeks legal relief in the form of monetary damages.").

essential functions of his job, with or without reasonable accommodation; and (3) that the employer took adverse action against him because of his disability. *See Bailey v. Ga. Pac. Corp.*, 306 F.3d 1162, 1166 (1st Cir. 2002).

Defendants contend that Plaintiff is not a qualified individual under the Rehabilitation Act because he applied for SSDI and FERS disability benefits, representing that he was disabled as of October 2017. ECF No. 183 at 11–15. To advance their assertion, Defendants cite to the First Circuit's decision in *Thompson v. Gold Medal Bakery, Inc.*, 989 F.3d 135 (1st Cir. 2021). In *Thompson*, the plaintiff asserted disability discrimination claims under the Americans with Disabilities Act ("ADA") against his former employer after he had been terminated on August 12, 2016. *Thompson*, 989 F.3d at 140; 42 U.S.C. §§ 12101 *et seq*. Following his termination, the plaintiff applied for SSDI disability benefits on August 23, 2016, stating under penalty of perjury that "he 'became unable to work because of his disabling condition on May 8, 2016,' and that, as of the date of filing . . .  he was 'still disabled.'" *Thompson*, 989 F.3d at 140. On appeal, the First Circuit, relying on the U.S. Supreme Court's decision in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), affirmed the district court's conclusion that the plaintiff's representation to the SSA that he was disabled as of May 8, 2016, estopped him from showing that he was a "qualified individual" as of his firing three months later on August 12, 2016. *Id.* at 143. However, the court noted that under *Cleveland*, "such a plaintiff could overcome judicial estoppel, and thus 'survive a defendant's motion for summary judgment' on [the qualified individual element of] her ADA claim . . . , if she could 'explain why her SSDI contention is consistent with' her 'qualified individual' contention" (hereinafter, "*Cleveland's* reasoned explanation requirement). *Id.* at 142 (citing *Cleveland*, 526 U.S. at 798, 801).

The U.S. Supreme Court in *Cleveland* did not create a per se rule barring a plaintiff from proceeding with a disability discrimination claim when he had applied for SSDI disability benefits because a disability discrimination takes into consideration reasonable accommodation while an SSDI claim does not. *Cleveland*, 526 U.S. at 803. Therefore, both claims could comfortably coexist where a disability discrimination claim shows that a plaintiff could perform his job with reasonable accommodation while his SSDI application shows that he could not perform his own job (or other jobs) without it. *Id.* In applying *Cleveland's* reasoned explanation requirement, the Court of Appeals for the First Circuit found that the plaintiff failed to explain the inconsistencies between his SSDI disability benefits application and his disability discrimination claims. *Thompson*, 989 F.3d at 143. Accordingly, as a result, the court stated that it "must 'assume the truth of, or' the plaintiff's 'good-faith belief in' the statements that he made in his benefits application, where he stated that his disability made him unable to work as of May 8, 2016, and was still disabled on August 23, 2016, his application date. *Id.*

In this case, Plaintiff applied for SSDI benefits on January 25, 2018, and represented to the SSA that he was disabled as of October 29, 2017. ECF No. 181-10 at 5–6. Plaintiff claims both physical and mental conditions as the reasons for his disability. ECF No. 180 at 43, ¶ 237; ECF No. 181-10 at 34; ECF No. 181-2 at 68, ¶¶ 3–4. His application includes a neurological evaluation completed by Dr. Claudia Camuñas which states under penalty of perjury indicating that Plaintiff stated that he "could not perform his duties due to side effects of psychiatric medications."[9] ECF No. 181-10 at 8. Additionally, his application includes a work history report

---

[9] Plaintiff argues that this statement is inadmissible hearsay, but this contention fails. ECF No. 198 at 48, ¶ 238. While the Tenth Circuit has persuasively determined that the assessments of physicians for the purpose of determining eligibility for disability benefits are covered under the Fed. R. Evid. 803(4) hearsay exception for "medical diagnosis or treatment," this issue can also be resolved on the basis that Dr. Camuñas's statement can be admitted for a non-hearsay purpose. *United States v. Hay*, No. 22-3276, 2024 WL 1163349, *9 (10th Cir. Mar. 19, 2024). Indeed, the statement is admissible to show that Plaintiff had notice of Dr. Camuñas's representation to the SSA when he applied for benefits. *Jenks v. New Hampshire Motor Speedway*, No. 09-CV-205-JD, 2012 WL

(Form SSA-3369) which contains Plaintiff's remarks stating that "the post office denied my request for reasonable accommodation because they realized I could not work, period. I was not healthy enough to continue working." ECF No. 181-10 at 31 (modified to normal capitalization). On September 30, 2019, an Administrative Law Judge determined that Plaintiff was disabled as of October 29, 2017, and was therefore entitled to SSDI disability benefits. ECF No. 181-10 at 6.

The First Circuit's decision in *Thompson* prevents Plaintiff's disability discrimination claim under the Rehabilitation Act from proceeding forward. While the *Thompson* court addressed a disability discrimination claim under the ADA, that does not alter the analysis because "the case law construing the ADA generally pertains equally to claims under the Rehabilitation Act." *Calero-Cerezo v. U.S. Dep't of Just.*, 355 F.3d 6, 19 (1st Cir. 2004). Like the plaintiff in *Thompson*, Plaintiff applied for SSDI disability benefits and represented that he was disabled and unable to work as of October 29, 2017, a date *before* his reasonable accommodation request was denied on November 10, 2017. ECF No. 181-10 at 5–6; ECF No. 181-5 at 153. While *Thompson* and *Cleveland* make clear that Plaintiff could still be considered a qualified individual for purposes of his disability claim if he could explain how his representations to the SSA are consistent with his argument that he is a qualified individual for his disability discrimination claim, like the plaintiff in *Thompson*, Plaintiff's attempt to do so is futile.

Plaintiff contends in his response in opposition to Defendants' motion for summary judgment that he was never asked by the SSA whether he could do his job as a mail carrier with an accommodation when he could have continued working for USPS with a reasonable

---

274348, *3 (D.N.H. Jan. 31, 2012) ("Evidence that would be barred as hearsay if offered to show the truth of the matter stated nevertheless may be admitted for a non-hearsay purpose, such as to show that a party had notice of that information." (citing *Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33, 41 (1st Cir.2011); *Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 345–46 (1st Cir.1998))).

accommodation. ECF No. 200 at 24. In other words, his SSDI application could reasonably

coexist with his disability discrimination claim because the SSA did not take into consideration

whether he could continue working with a reasonable accommodation, and Plaintiff claims that

he could have. Plaintiff's argument has already been addressed in *Pena v. Honeywell Int'l, Inc.*,

923 F.3d 18 (1st Cir. 2019), and it was held to not meet *Cleveland's* reasoned explanation

requirement:

> [The plaintiff] argues that she has given an adequate explanation for the apparent
> inconsistency between her SSDI statements and her position in this litigation. She
> first argues that it is enough for her to say in her brief that being disabled under the
> ADA is different from being disabled for SSDI benefits, because the ADA takes
> into account an employer's duty to make reasonable accommodations, while SSDI
> does not. [The plaintiff] argues that if her SSDI application or the ALJ had asked if
> she needed disability accommodations to work, she would have responded "yes."
> She states that this is sufficient to meet her burden under *Cleveland*. This misreads
> (and would read out of the law) *Cleveland's* reasoned explanation requirement.
> When the plaintiff in *Cleveland* made these same general arguments, the Court did
> not accept them; rather, it remanded for factual findings. *Id.*

*Pena*, 923 F.3d at 28. Here, just like in *Pena*, Plaintiff raises this argument solely in his briefings

when "to defeat summary judgment, . . . [P]laintiff needed to produce 'evidence to explain this

discrepancy.'" *Id.* at 29. Accordingly, this court "must 'assume the truth of, or' Plaintiff's 'good-

faith belief in' the statements that he made in his benefits application," specifically that he was

disabled and unable to work as of October 29, 2017. *Thompson*, 989 F.3d at 143. In doing so,

Plaintiff cannot show that he was a qualified individual under the Rehabilitation Act, as of

November 10, 2017, the date his reasonable accommodation request was denied. Hence, his

disability discrimination claim based on his denial of reasonable accommodation fails as a matter

of law.

    Plaintiff raises several arguments in an attempt to survive summary judgment. First, in

one sentence, he tries to factually distinguish the facts surrounding his case to those in

*Thompson*: "*Thompson* is distinguishable because the representations of the [*Thompson*] plaintiff concerning his ADA disability were contemporaneously made with his request for SSA benefits, which is completely different than in this case." ECF No. 200 at 12. This conclusory statement fails to distinguish the facts of *Thompson* from the instant action. Specifically, Plaintiff has failed to articulate how his representation to the SSA that he was disabled as of October 29, 2017—less than two weeks before November 10, 2017—is not contemporaneous with his assertion that he was a qualified individual on November 10, 2017, the date of the reasonable accommodation denial.

Second, Plaintiff argues that even if the cases are indistinguishable and it is assumed as true that Plaintiff was unable to work since October 29, 2017, he was still able to work at USPS from January through September of 2017. ECF No. 200 at 12. Even if this were true, however, it changes nothing because Plaintiff's reasonable accommodation request was denied on November 10, 2017. Regardless of whether Plaintiff was able to work before October 2017, Plaintiff has no basis, on the grounds that he was a qualified individual, to contest the denial of his reasonable accommodation on November 10, 2017, when he had represented to the SSA that he was unable to work as of October 29, 2017. In other words, by the time Plaintiff's reasonable accommodation request was denied, he had already conceded that he was not a qualified individual under the Rehabilitation Act.

Third, Plaintiff asserts that after his reasonable accommodation request was denied on November 10, 2017, Mr. Delgado forced him to choose retirement by applying for SSDI disability benefits. ECF No. 200 at 25, 31. To support said assertion, Plaintiff cites to his own deposition testimony, claiming that Mr. Delgado insisted that he apply for SSDI benefits according to his instructions:

> Q. [Plaintiff] did you represent to the [SSA] that you were disabled starting on October 29, 2017?
>     . . . .
> A. Most of the information that's written there, that's filled out in that document, is because of the way that Mr. Juan Delgado insisted that I had to fill out that document.
>
> Q. Your contention is that he forced you to write this document?
>
> A. Well, he, he told me, in a very threatening way, that if I wanted to apply for social security and any of the other help that I needed at the time, that I had to write a letter to him. And he told me exactly what to write in that letter. . . . So the only way I could receive the benefits, including social security, was to write the letter exactly how he told me to do it, and that I also had to ask him for a separation letter due to disability.
>     . . . .
> Q. And Juan Delgado threatened you to write the letter how? Your separation letter how?
>
> A. He told me to stand up. And he asked me if I walk with a cane. And I told him that recently I had to use the cane in order to stand up - - in order to be standing up. And at that time, he determined that I couldn't work at the [USPS].

ECF No. 198-6 at 57, ¶¶ 3–25; ECF No. 198-6 at 58, ¶¶ 1–6; ECF No. 198-6 at 60, ¶¶ 9–16.

Nothing in the testimony above suggests that Plaintiff was forced or threatened into applying for SSDI disability benefits. Nor can a reasonable inference be made that Plaintiff was threatened or forced into applying for SSDI disability benefits. To the contrary, Plaintiff's testimony stating that Mr. Delgado told him that "*if [Plaintiff] wanted to apply for social security* and any of the other help that [Plaintiff] needed at the time, that [Plaintiff] had to write a letter to him" explicitly demonstrates that Mr. Delgado left the choice of applying for SSDI disability benefits to Plaintiff. ECF No. 198-6 at 57, ¶¶ 17–21. Accordingly, Plaintiff's contention that he was forced into applying for SSDI benefits fails.

Plaintiff's representations to the SSA alone are enough to dismiss his disability claim on summary judgment. However, said conclusion is reinforced by the fact that Plaintiff also applied for disability benefits under FERS and represented to OPM that he was disabled before his

reasonable accommodation request was denied on November 10, 2017. Under FERS, "an employee shall be considered disabled only if the employee is found by [OPM] to be unable, because of disease or injury, to render useful and efficient service in the employee's position." 5 U.S.C. 8451(a)(1)(B). Furthermore, OPM promulgated regulations detailing the eligibility requirements under FERS, which includes that, among other things, the employer "must consider a disability applicant for reassignment to any vacant position" and that "[a]ccomodation of the disabling medical condition in the position held must be unreasonable." 5 C.F.R. 844.103(a)(4), (b).

Applying *Cleveland*, courts have held that a plaintiff may be precluded from bringing a disability discrimination claim after filing for disability benefits under the Civil Service Retirement System ("CSRS"). *See Faconti v. Potter*, 242 F. App'x 775, 776 (2d Cir. 2007) (noting that "the requirements for obtaining a [CSRS] disability retirement annuity are wholly inconsistent with the requirements for proving a claim of disability discrimination under the Rehabilitation Act" (internal alterations omitted) (quotation omitted)); *Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 196 (D.D.C. 2008) ("In light of the plaintiff's assertion to the OPM that she could not work, even with an accommodation, the plaintiff cannot now argue she can work with an accommodation."); *Wallace v. Soc. Sec. Admin.*, 108 F. Supp. 2d 716, 718–719 (S.D. Tex. 2000) (recognizing that a claim of disability retirement under the CSRS precludes a Rehabilitation Act claim because plaintiffs applying for disability retirement under the CSRS must be unable to work even with an accommodation).

While Plaintiff applied for disability benefits under FERS, and not CSRS, unlike the cases above, that does not change the analysis because "the statutory retirement systems []such as the CSRS and FERS[] are overlapping statutory schemes . . . [that] provide a reticulated

remedial regime for beneficiaries to secure review—including judicial review—of benefits determinations." *Rodríguez v. United States*, 852 F.3d 67, 83 (1st Cir. 2017); *see also Anthony v. Office of Personnel Mgmt.*, 58 F.3d 620, 622, 626 (Fed. Cir. 1995) (applying Supreme Court's interpretation of statutes governing disability retirement decisions under CSRS to the "parallel provisions" in FERS). Here, Plaintiff filed an application for disability retirement under FERS stating: (1) that at the time he was in "leave without pay status"; (2) that due to his conditions, he could no longer sit, walk, lift, bend, squat, climb, kneel, and stand; (3) that he has to be assisted with a cane or a wheelchair for his daily activities; (4) that his medications render him unable to do normal everyday activities; and (5) that he became disabled for his position on October 28, 2017. ECF No. 180 at 44–45, ¶ 243; ECF No. 181-30 at 10–11. The application certifies he requested accommodations "per medical recommendations," but USPS was unable to grant his request. ECF No. 181-30 at 10. Further, the certified application under the penalty of perjury, signed by Plaintiff, contains two dates next to his signature: May 21, 2018, and March 2019.[10] ECF No. 181-30 at 11. Moreover, in support of his FERS application, Plaintiff included a medical certificate from Dr. Mari Tere García Rondon stating that Plaintiff "[can]not perform the duties expected for a postman" because of his medical conditions.[11] ECF No. 181-30. On September 9, 2019, OPM sent a letter to Plaintiff finding him to be disabled for his position as a mail carrier and approving his application for disability retirement under FERS, and as a result, since 2020, Plaintiff has received disability annuity payments. ECF No. 180 at 46, ¶¶ 249–50; ECF No. 198 at 50, ¶¶ 249–50.

---

[10] Regardless of which date Plaintiff signed the application, it does not change the analysis because his FERS application unambiguously states that he was disabled as of October 28, 2017, a date before his reasonable accommodation request was denied.

[11] Plaintiff asserts that this statement is inadmissible hearsay. However, as per the reasoning in footnote nine, that contention is untenable.

Plaintiff does not cite any evidence to explain the inconsistency between his FERS application disability date of October 28, 2017, and his contention that he was a qualified individual under the Rehabilitation Act when his reasonable accommodation was denied on November 10, 2017. Nor could any of the assertions in Plaintiff's FERS application package be construed to help explain the discrepancy. Had Plaintiff wanted to represent to OPM that he disagreed with USPS's denial of his reasonable accommodation because he believed he could have continued working with a reasonable accommodation, he could have certainly done so. Plaintiff's FERS application explicitly asks the applicant: "Has your agency been able to grant your request [for reasonable accommodation] (Attach an explanation or any documentation that you have regarding accommodation)." ECF No. 181-30 at 10. Instead of attaching any type of clarification, as explicitly asked by the application, Plaintiff simply checked the box stating "No." ECF No. 181-30 at 10. Because Plaintiff represented to both SSA and OPM that he was disabled before the denial of his reasonable accommodation request and has failed to point to evidence explaining said discrepancy, his disability discrimination claim fails as a matter of law. In light of Plaintiff's failure to establish a prima facie case, no further discussion regarding whether USPS acted with discriminatory intent is warranted. *See Ingram v. Brink's, Inc.*, 414 F.3d 222 (1st Cir. 2005) ("If, as is the case here, the plaintiff fails to make it past the first stage, i.e. to aver a prima facie case, the inference of discrimination simply never arises and the employer's motion for summary judgment is granted."). The court will now address Plaintiff's retaliation claims.

**B. Whether Plaintiff has provided evidence for a reasonable jury to conclude that he was subjected to retaliation arising from the November 4, 2017, EEO charge.**

Defendants contend that Plaintiff's claims for retaliation fail because he cannot establish a causal connection between his protected conduct and the denial of his accommodation request

or his notice of separation disability. ECF No. 183 at 31. "In a Rehabilitation Act retaliation suit, [a] plaintiff can make out a prima facie case by 'show[ing] that (1) he or she engaged in protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) there was a causal connection between the protected conduct and the adverse action.'" *Palmquist v. Shinseki*, 689 F.3d 66, 70 (1st Cir. 2012) (citing *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 41 (1st Cir. 2012)). If a plaintiff satisfies the elements above, "[t]he burden then shifts to the employer to articulate a legitimate, nonretaliatory reason for the employment decision." *Id.* (citing *D.B.*, 675 F.3d at 41). "This is merely a burden of production and, once such a reason is articulated, it is up to the employee to show that the proffered reason was pretextual and that retaliation was the true reason." *Id.* (citing *D.B.*, 675 F.3d at 41). The burden of persuasion remains at all times with the plaintiff. *Reyes–Orta v. P.R. Highway & Transp. Auth.*, 811 F.3d 67, 73 (1st Cir. 2016).

As to the first element, whether Plaintiff engaged in protected conduct, Defendants do not challenge that Plaintiff filed an EEO charge of physical disability discrimination on November 4, 2017. ECF No. 183 at 32. Additionally, Defendants do not contest whether the second element, that is whether Plaintiff was subjected to an adverse action by USPS, is met because USPS denied Plaintiff's request for reasonable accommodation on November 10, 2017, and USPS sent Plaintiff a notice of separation from employment due to disability on February 26, 2018. ECF No. 183 at 32. Accordingly, the first two elements are met. In addition, regarding the second element, Plaintiff argues that USPS engaged in retaliation by subjecting him to other instances of adverse activity. Specifically, Plaintiff contends that he was also subject to adverse action when USPS refused to engage with him in a good faith process for reasonable accommodation and when USPS allegedly terminated him on October 27, 2017. ECF No. 200 at 32. Both of these

assertions, regardless of whether they are true, must fail because they ignore this court's earlier ruling addressing Defendants' motion to dismiss (ECF No. 152). In said ruling, the court made it clear that the only retaliation claims remaining were those stemming from the November 4, 2017, EEO administrative charge.[12] ECF No. 152 at 23 ("Plaintiff's claims of retaliation not arising from the November 4, 2017 administrative charge are DISMISSED WITH PREJUDICE.").

As a result, Plaintiff's assertion that he was terminated on October 27, 2017, can be easily discarded as an adverse activity for purposes of his retaliation claim because said allegation occurred before the November 4, 2017, administrative charge. Likewise, Plaintiff's allegation that USPS failed to engage in a good faith process for reasonable accommodation does not qualify as an adverse activity for purposes of his retaliation claim because Plaintiff met with the DRAC committee on August 8, 2017. ECF No. 180 at 28, ¶ 151; ECF No. 198 at 33, ¶ 151. Therefore, any engagement between Plaintiff and USPS to determine whether a reasonable accommodation existed happened before the November 4, 2017, administrative charge. Accordingly, the court's analysis will focus only on the two adverse activities previously addressed above: (1) that Plaintiff's reasonable accommodation request was denied on November 10, 2017, and (2) that USPS sent Plaintiff a notice of separation from employment due to disability on February 26, 2018.

The only element remaining for Plaintiff to establish a prima facie case for retaliation under the Rehabilitation Act is causation. To show causation under the Rehabilitation Act, a

---

[12] Moreover, Plaintiff continuously mischaracterizes his July 2017 EEO "Pre-Complaint Counseling" submission as his EEO administrative charge. *Compare, e.g.*, ECF No. 198 at 79, ¶ 134 (showing Plaintiff proposing as fact that he filed his EEO complaint in July of 2017), *with* ECF No. 181-28 at 1, 3 (indicating that Plaintiff filed a Pre-Complaint Counseling in July 2017), *and* ECF No. 181-12 at 1 (noting that Plaintiff submitted his EEO complaint on November 4, 2017).

plaintiff must prove that his protected activity was the *but-for* cause of the adverse action taken against him by the employer. *Palmquist*, 689 F.3d at 77. Put differently, Plaintiff must establish "'that the harm would not have occurred' in the absences of—that is, but for—" his protected conduct. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013). The "but-for" standard raises Plaintiff's burden compared to the "motivating factor" causation standard applicable to Title VII claims. Under the motivating factor standard, "it suffices to 'show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision.'" *Nassar*, 570 U.S. at 343.

Notwithstanding, causation "may be established by evidence that there was a temporal proximity between the behavior in question and the employee's complaint." *Quiles-Quiles v. Henderson*, 439 F.3d 1, 8 (1st Cir. 2006). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see also Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 25 (1st Cir.2004) ("Three and four month periods have been held insufficient to establish a causal connection based on temporal proximity."). Even so, "chronological proximity does not by itself establish causality, particularly if 'the larger picture undercuts any claim of causation.'" *Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003) (quoting *Soileau v. Guilford of Me., Inc.*, 105 F.3d 12, 16 (1st Cir. 1997). The court will now address whether Plaintiff's claim of retaliation based on his denial of reasonable accommodation on November 10, 2017, survives summary judgment.

1.  **Plaintiff's Retaliation Claim Based on the November 10, 2017, Denial of Reasonable Accommodation.**

Plaintiff has provided sufficient evidence to establish causation based on temporal proximity. Here, the record shows that Plaintiff filed his EEO charge on November 4, 2017, and that his reasonable accommodation was denied six days later on November 10, 2017. *See, e.g.*, *Mariani-Colon v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 224 (1st Cir. 2007) (holding that two month period is sufficient to establish causation based on temporal proximity); *Alvarado v. Donahoe*, 687 F.3d 453, 464 (1st Cir. 2012) ("[A]n interval of approximately one week between protected conduct and his suspension is sufficiently close temporal proximity to warrant a prima facie inference of a causal connection." (dictum)).

Because Plaintiff has met the elements to establish a prima facie case for retaliation, the burden now shifts to Defendants in showing that their denial of reasonable accommodation was based on a legitimate, non-retaliatory reason. *Palmquist*, 689 F.3d at 70 (citing *D.B*, 675 F.3d at 41. To meet this burden, Defendants point to the reasons set forth in the letter dated November 10, 2017, denying Plaintiff's reasonable accommodation request. ECF No. 183 at 33–34. Specifically, Defendants note that the denial of Plaintiff's reasonable accommodation request was based on the fact that Plaintiff was not able to perform the essential functions of the letter carrier position; no reasonable accommodation existed for Plaintiff to perform the functions of a letter carrier; and a transfer to an alternate position was not feasible. ECF No. 183 at 33–34; ECF No. 181-5 at 153. This is enough to satisfy Defendants' burden at this stage. Consequently, the burden shifts back to Plaintiff to show that USPS's reasons were pretextual. *Palmquist*, 689 F.3d at 70 (citing *D.B*, 675 F.3d at 41).

While Plaintiff raises several contentions arguing that USPS's true reason behind its denial of reasonable accommodation on November 10, 2017, was retaliation, many of these

reasons need not be considered because they ignore this court's earlier ruling. *See, e.g.*, ECF No. 200 at 30. Again, in the opinion and order addressing Defendants' motion to dismiss (ECF No. 152), the court made clear that the only retaliation claims remaining alive are those arising from the November 4, 2017, EEO administrative charge. ECF No. 152 at 23. Therefore, any action occurring before November 4, 2017, cannot be considered in the pretext inquiry.

Plaintiff raises two arguments explaining why the DRAC got it wrong on November 10, 2017, when it concluded that Plaintiff could not complete the essential functions of the city carrier position. Both arguments are without merit. First, Plaintiff argues that he could perform the essential functions of his position, citing to what he asserts is the official list of duties and responsibilities of the city carrier position (ECF No. 198-3 at 1). ECF No. 198 at 2–3. While the parties dispute what are the official duties of the city carrier position by pointing to alternate forms describing the duties of said position, for the purposes of today's decision, the court will assume Plaintiff's version to be true. Even so, Plaintiff's argument is unfounded as shown by his inability to meet the job's lifting requirements. In 2017, Plaintiff continuously represented to USPS that he could not lift more than 35 pounds (e.g., his reasonable accommodation request in May 2017 stated that he was limited to lifting 35 pounds). *E.g.*, ECF No. 181-12 at 4. However, Plaintiff now argues that he still meets the essential functions of the city carrier position because the lifting requirements, as per his evidence, state that a city carrier "*may be* required to carry mail weighing up to 35 pounds in shoulder satchels or other equipment and to load or unload container of mail weighing up to 70 pounds." ECF No. 198 at 2; ECF No. 198-3 at 1 (emphasis added). Plaintiff interprets the term "may be" to mean that loading and unloading up to 70 pounds is *not* an essential function of the job. This contorted interpretation is untenable. If a job description says that you may have to do a certain activity, then it is expected that the employee

be capable to do said activity should the need arise. Hence, no reasonable jury could conclude that Plaintiff's job description means that a city carrier would not be required to lift over 35 pounds.

Second, Plaintiff asserts that he was qualified for the city carrier position because his expert witness, Dr. Carlos Grovas ("Dr. Grovas") opined in his deposition on November 18, 2021, that Plaintiff could lift 70 pounds in 2017. ECF No. 200 at 17; ECF No. 198-35 at 1. [13] As a preliminary matter, if Dr. Grovas's assessment was true, then Plaintiff has discredited himself when he continuously represented to USPS in 2017 that he was unable to lift 70 pounds. In addition, nowhere in the Independent Medical Evaluation dated December 28, 2020, does Dr. Grovas state whether Plaintiff can lift up to 70 pounds. ECF No. 198-38. Notwithstanding, a bigger problem is that Dr. Grovas evaluated Plaintiff only once and that was in 2020. ECF No. 226-7 at 2, ¶¶ 14–21; ECF No. 226-7 at 3, ¶¶ 9–12. Dr. Grovas's deposition testimony, as cited by Plaintiff, fails to indicate whether Dr. Grovas's opinion is about Plaintiff's ability to lift 70 pounds at the time of his evaluation in 2020 or 2017. ECF No. 198-35 at 33–34.

Even giving Plaintiff the benefit of the doubt that Dr. Grovas is referring to Plaintiff's conditions in 2017, no reasonable jury could conclude that USPS acted in retaliation because USPS did not have Dr. Grovas's opinion (made on November 18, 2021) back in 2017 when it denied Plaintiff's reasonable accommodation request. To the contrary, per the record evidence, USPS had, among other things, multiple Work Restriction forms ranging from January 2017 to September 2017 stating that Plaintiff could lift no more than 35 pounds. *E.g.*, ECF No. 181-5 at 115–121. Moreover, Plaintiff fails to cite to evidence suggesting that USPS had evidence in its possession indicating that Plaintiff could lift up to 70 pounds when it denied his reasonable

---

[13] At his deposition, Dr. Grovas stated that Plaintiff could carry 45 pounds and over and lift up to 75 pounds intermittently. ECF No. 198-35 at 34.

accommodation request. Thus, it would be unreasonable for USPS in 2017 to believe that Plaintiff could lift up to 70 pounds based on evidence that it did not have in its possession nor could have had in its possession because said evidence was produced approximately three years later. Accordingly, this argument fails. Seeing that Plaintiff has failed to present evidence for a reasonable jury to conclude that the basis of the DRAC's decision regarding Plaintiff's inability to serve as a city carrier was a sham, the court now considers Plaintiff's arguments challenging the DRAC's conclusion that Plaintiff could not have been accommodated in another position.

Plaintiff asserts that he could have been accommodated to another position because Dr. Grovas said so. ECF No. 200 at 18; ECF No. 198 at 59, ¶ 28. Specifically, Plaintiff points to Dr. Grovas's testimony where he notes that Plaintiff could have been accommodated to another position, such as delivering mail in a moving vehicle or throughout condominiums. ECF No. 198-35 at 52–53. However, Dr. Grovas is not a factual witness and thus, is not in a position to testify as to which positions where vacant or available at the time of the events at issue, whether those positions had the same responsibilities and benefits as the one that Plaintiff had, and whether providing Plaintiff with positions such as the ones suggested by Dr. Grovas would have been in compliance with any pertinent collective bargaining agreements ("CBA").

Plaintiff next argues that USPS did not propose any alternative accommodations, as required by the Rehabilitation Act. ECF No. 200 at 22. According to Plaintiff, USPS had a duty to reassign him, and it failed to do so, especially when Plaintiff specifically told the DRAC that he was willing to work anywhere in USPS. ECF No. 200 at 17–18, 25. The First Circuit has held that the employee bears the burden of showing that a vacant position, which could be used as a reasonable accommodation, exists. *Lang v. Wal-Mart Stores E., L.P.*, 813 F.3d 447, 456 (1st Cir. 2016) (citing *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 27 (1st Cir.2001) (noting that a

"[r]easonable accommodation may include reassignment to a vacant position," and stressing that

the employee "bears the burden of proof in showing that such a vacant position exists" (internal

quotations and citations omitted))).[14] Moreover, an employee must also show that they can

perform the essential functions of the vacant position. *Alamo Rodriguez v. Pfizer Pharms.*, Inc.,

286 F. Supp. 2d 144, 162 (D.P.R. 2003) ("It is the employee's responsibility to make at least a

facial showing that there are vacant, funded positions whose essential functions he was able to

perform." (quoting *Jones v. United Parcel Service*, 214 F.3d 402, 407 (3rd Cir. 2000) (internal

alterations and quotations omitted)). Plaintiff, however, has failed to cite to evidence for a jury to

conclude that he identified a vacant position that would constitute a reasonable accommodation

under the law and that he could perform. In light of this standard, Plaintiff's statement that he

was willing to work anywhere in USPS is not sufficient for a reasonable jury to conclude that he

identified a vacant position.

There is other evidence in the record showing that USPS had vacancies on or around the

DRAC meeting that occurred on August 8, 2017, specifically positions as an administrative

assistant, a secretary, and three vacancies for human resources clerks. ECF No. 180 at 33, ¶ 177;

---

[14] Plaintiff cites to the EEOC's Enforcement Guidance on Reasonable Accommodation and Undue Hardship (hereinafter, the "Enforcement Guidance") to support his assertion that USPS had the duty to find Plaintiff a vacant position. ECF No. 200 at 26. However, the Enforcement Guidance is not binding on the court. *See, e.g.*, *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000); *Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 815 (6th Cir. 2012); *Brunckhorst v. City of Oak Park Heights*, 914 F.3d 1177, 1182 (8th Cir. 2019). While courts may use the Enforcement Guidance as persuasive authority, that position is untenable here in light of the binding jurisprudence set forth by the First Circuit. *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (explaining that "interpretations contained in . . . enforcement guidelines . . . lack the force of law" but are "entitled to respect . . . only to the extent that those interpretations have the power to persuade." (internal quotations and citations omitted)). Moreover, the EEOC Appeal's Decision addressing Plaintiff's EEO complaint (ECF No. 198-39) and citing to the Enforcement Guidance, which suggests that USPS had a duty to find a vacancy for Plaintiff, is likewise not binding on this court because the facts and law of that decision are reviewed de novo. *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005) ("[T]he EEOC decision had no binding effect on the district court's proceedings."); *see also Bourque v. Shinseki*, No. CIV.A. 11-10164, 2011 WL 6148430, *2 n.5 (D. Mass. Dec. 9, 2011) ("The court has de novo review of the EEOC's decision." (citing *Chandler v. Roudebush*, 425 U.S. 840, 844 (1976)); *Willard v. MHM Correctional Services, Inc.*, No. 13-12354-LTS, 2015 WL 7194585, at *5 (D. Mass. Nov. 16, 2015) ("The Court recognizes that, notwithstanding the EEOC proceedings, it reviews the facts and the law de novo." (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 474 (1982) ("[T]he requirement of a trial de novo in federal district court following EEOC proceedings was added primarily to protect employers from overzealous enforcement by the EEOC."))).

ECF No. 181-26 at 14–16, 18. However, Plaintiff has failed to provide evidence for a reasonable jury to conclude that any of these vacant positions were reasonable accommodations in accordance with the Rehabilitation Act. Courts have recognized that employees are not entitled to any position—the accommodation must be reasonable. *See Feliciano v. State of R.I.*, 160 F.3d 780, 787 (1st Cir. 1998). For example, an employer "is not required to violate the provisions of a [CBA] or the rights of other employees in seeking such reassignment." *Id.* Nor must an employer violate the rules of a seniority system to accommodate an employee. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 406 (2002) As a preliminary matter, Plaintiff cites to no evidence suggesting that he could perform the essential functions of any of the listed vacancies (i.e., administrative assistant, secretary, and human resources clerk). However, even if he could, it would not change the result. Regarding the administrative assistant position, USPS points to the deposition testimony of Ms. Carla Ortiz ("Ms. Ortiz") explaining that the administrative assistant is a higher position and would therefore be a promotion. ECF No. 181-26 at 7–8. Plaintiff cites to no evidence refuting Ms. Ortiz's testimony, and furthermore, an employer is not required to promote employees as a reasonable accommodation. *See Barnett*, 535 U.S. at 406; *Bettis v. Dep't of Hum. Servs. of State of Illinois*, 70 F. Supp. 2d 865, 868 (C.D. Ill. 1999) ("[T]he ADA does not require employers to promote the employees.").

Regarding the secretary position, Ms. Ortiz's testimony explains that an assignment to this position, while technically possible, would violate the CBA of the clerk craft. ECF No. 181-26 at 8, ¶¶ 21–25; ECF No. 181-26 at 9, ¶¶ 10–21. Plaintiff cites to no evidence refuting that an assignment would violate the CBA.[15] Therefore, the secretary position is not a reasonable

---

[15] Plaintiff asserts that the USPS's Reasonable Accommodation Handbook "contemplates an interactive process designed to ameliorate any conflicts with the CBA." ECF No. 200 at 28. However, Plaintiff does not cite to a specific page in the (as provided) 84-page handbook to support this assertion. *See* ECF No. 200 at 28. Anyhow, this argument is meritless because the handbook, in alignment with the Rehabilitation Act, indicates that a reassignment

accommodation. While Plaintiff's counterarguments hinge on the fact that a reassignment was possible, the law does not require any assignment that is possible, but only reasonable. The human resources vacancies are no different. According to Ms. Ortiz, these positions are "bided positions" and get "bided by senior employees [because they have] been waiting for these kinds of positions for a long time." ECF No. 181-26 at 10; ¶ 25; ECF No. 181-26 at 11, ¶¶ 24–25; ECF No. 181-26 at 12, ¶ 1. Plaintiff offers no evidence to challenge this assertion, and therefore, because employers are not required to violate the rights of a seniority system, the human resources positions were not reasonable accommodations.[16]

Plaintiff also points to his unsworn statement under penalty of perjury where he declares that there were mounted routes available as of August 8, 2017, in the Cupey station. ECF No. 198-1 at 4. While Plaintiff has successfully pointed to evidence identifying a vacancy, this contention cannot prosper because USPS has pointed to deposition testimony from Ms. María Díaz and Mr. Quiñones indicating that mounted routes are awarded based on seniority after a bidding process. ECF No. 181-24 at 15–16; ECF No. 181-7 at 12. Instead of pointing to evidence to refute this contention, Plaintiff asserts that Ms. María Díaz's and Mr. Quiñones's testimony is inadmissible because "whether the Rehabilitation Act and the USPS'[s] own Reasonable Accommodation [Handbook] supersedes a USPS bidding process is an issue of law on which a nurse like [Ms.] Mar[í]a D[í]az and a supervisor like [Mr.] Qui[ñ]ones cannot opine." ECF No. 198 at 35, ¶ 162. The court disagrees. As a preliminary matter, Ms. María Díaz and

---

that violates the CBA is unreasonable. *See, e.g.*, ECF No. 198-9 at 15–16 ("An accommodation is not reasonable when it . . . [v]iolates the seniority provisions of a collective bargaining agreement.")

[16] Plaintiff's request that he be reassigned to the customer connect position suffers a similar fate. Plaintiff points to his own unsworn statement under the penalty of perjury where he states that "[i]n 2017, the position of customer connect representative was available. But it was converted into a management position occupied by Lissette Ortiz." ECF No. 198-1 at 9. Plaintiff's statement does not specify if the accommodation was available after the date of his EEO charge, November 4, 2017. But even if it was, by his own admission, Plaintiff could not have been assigned to the position because it was not vacant as it was occupied by another.

Mr. Quiñones are not opining on an issue of law. Moreover, as previously discussed, both the Rehabilitation Act and the USPS's Reasonable Accommodation Handbook state that an accommodation is not reasonable if it violates the rules of a seniority system. *Barnett*, 535 U.S. at 406 (2002); *see also* ECF No. 198-9 at 15–16 (USPS's Reasonable Accommodation Handbook stating that "[a]n accommodation is not reasonable when it . . . [v]iolates the seniority provisions of a collective bargaining agreement"). Therefore, USPS's evidence noting that mounted routes are based on a seniority bidding system stands undisputed.

Plaintiff next contends that he could have been accommodated because other USPS employees, who were all presumably city carriers, received accommodations. ECF No. 200 at 22. Specifically, Plaintiff asserts that Mr. Nelson Izquierdo, Mr. Junior Pérez, and Mr. Orlando González Tomasini from the Bayamón station received reasonable accommodations, and therefore, Plaintiff should have too. ECF No. 198-1 at 4, ¶ 10. Courts have suggested that an employee can show discriminatory pretext by making a showing that other similarly situated employees received treatment that was not offered to him. *See, e.g.*, *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100 (1st Cir. 2005). However, Plaintiff does not cite to any evidence to suggest that the employees were similarly situated. For example, there is no evidence clarifying what each individuals' limitations were. Without evidence noting the limitations of the other employees, it is speculative as to whether Plaintiff could have performed the functions of the job even with the accommodations offered to the other employees. Therefore, without more, a reasonable jury could not conclude that Plaintiff could have been accommodated simply because the other employees were. Accordingly, Plaintiff has failed to challenge the legitimacy of USPS's decision that no reasonable accommodation existed to raise an issue of pretext. The

court next addresses Plaintiff's challenges towards the procedures used by the DRAC in deciding whether to accommodate Plaintiff.

Most of Plaintiff's arguments addressing the DRAC's procedural failures need not be discussed because those arguments challenge things the DRAC did or failed to do on the day that Plaintiff met with it, August 8, 2017. This includes Plaintiff's argument that the DRAC was required to have a physician as part of its committee and that Mr. Quiñones should not have been part of the committee. Even if Plaintiff is correct in his assertion, he cannot use this omission and act as a basis for pretext because the evidence shows that the decision to have Mr. Quiñones present and not have a physician present on August 8, 2017, happened before the EEO charge on November 4, 2017. However, one argument warrants further consideration. Plaintiff asserts that USPS failed to abide by its own policy when it did not consult the legal department before denying his reasonable request for accommodation. ECF No. 200 at 9. To support said assertion Plaintiff points to USPS's policy which does state that "the [DRAC] must consult with the law office before making a final determination to . . . [d]eny a request for reasonable accommodation." ECF No. 198-9 at 73, ¶ 63. Additionally, Plaintiff cites to the deposition testimony of Ms. Velázquez where she confirms that she did not consult the USPS legal department before denying Plaintiff's request for reasonable accommodation. ECF No. 198-24 at 29–30. While Plaintiff cites to no evidence suggesting that Ms. Velázquez's decision to not consult the legal department came after the EEO charge on November 4, 2017, a reasonable inference could be drawn that it did because this time period (November 5–9) was right before USPS denied Plaintiff's request on November 10, 2017.

"Evidence that the employer deviated from its standard procedure or policies in taking an adverse employment action against a plaintiff may be relevant to the pretext inquiry." *Rodriguez-*

*Cardi v. MMM Holdings, Inc.*, 936 F.3d 40, 50 (1st Cir. 2019) (citations omitted). However, as shown in the analysis above, even if the DRAC consulted the legal department before denying Plaintiff's request for reasonable accommodation, the end result would be the same: Plaintiff's accommodation request would have still been denied because there were no vacancies that Plaintiff was capable of doing and that qualified as reasonable accommodations under the law. Plaintiff fails to cite to evidence suggesting otherwise. Accordingly, this argument fails. *See id.* at 50 (holding that employee failed to establish pretext where she "points to no evidence indicating . . . that [employer's] alleged deviation from its Anti-Discrimination Policy (i.e., its failure to investigate [employee's] alleged complaints) had any bearing in the termination decision"). Because Plaintiff has failed to point to evidence challenging the legitimacy behind USPS's reasons for denying his reasonable accommodation on November 10, 2017, no reasonable jury could conclude that USPS acted in retaliation when it denied Plaintiff's accommodation request. The court will now address Plaintiff's retaliation claim regarding his notice of disability separation dated February 26, 2018.

### 2. Plaintiff's Retaliation Claim Regarding the February 26, 2018, Notice of Disability Separation

Having proven the first two elements of Plaintiff's prima facie case for retaliation, the court now considers whether Plaintiff has shown that his November 4, 2017, EEO charge was the *but-for* cause for his notice of disability separation on February 26, 2018. A reasonable argument could be made that Mr. Quiñones, one of the signatories of the February 26, 2018, letter, had knowledge on February 5, 2018, of Plaintiff's November 4, 2017, EEO charge.[17] ECF No. 198 at 88, ¶ 174; ECF No. 226 at 54, ¶ 174. To support this assertion, there is evidence in the

---

[17] Plaintiff does not make this argument and instead cites to evidence showing that Mr. Quiñones knew about Plaintiff's EEO pre-counseling in July 2017. Again, this argument discounts the court's previous opinion and order. *See* ECF No. 152 at 23.

record showing that Mr. Quiñones signed on February 5, 2018, and filled out an EEO investigative affidavit related to Plaintiff's November 4, 2017, EEO charge of discrimination. ECF No. 181-22 at 1. A reasonable inference could be drawn from this evidence that Mr. Quiñones first learned of Plaintiff's EEO charge on February 5, 2018. While an argument could be made that this three-week time period establishes causation based on temporal proximity, in light of the but-for causation standard, it overlooks the bigger picture. *Wright*, 352 F.3d at 478 ("[C]hronological proximity does not by itself establish causality, particularly if 'the larger picture undercuts any claim of causation.'" (quotation omitted)).

Here, the bigger picture shows that Plaintiff wrote a letter to management at the Caparra Heights Post Office on January 10, 2018, and one to Mr. Delgado on February 9, 2018, requesting a letter of separation due to disability. ECF No. 181-5 at 144. In light of said letters, Defendants argue that USPS had a legitimate non-retaliatory reason to send Plaintiff a notice of separation based on disability. ECF No. 183 at 34. However, before said argument can even be addressed, Plaintiff must still provide evidence showing that the November 4, 2017, EEO charge was the but-for cause of Plaintiff receiving a notice of disability separation on February 26, 2018. In other words, Plaintiff must show that had he not filed the EEO charge on November 4, 2017, he would not have received the notice of separation based on disability, effectively ending his employment with USPS.

As previously mentioned, Plaintiff asserts that his letters requesting a notice of disability separation from USPS in and of themselves are insufficient evidence because they were the product of force, threat, or coercion by Mr. Delgado. *See, e.g.*, ECF No. 200 at 25; ECF No. 180 at 39, ¶ 211; ECF No. 198 at 44, ¶ 211. To support said assertion, he cites to his own deposition testimony:

Q. [Plaintiff] did you represent to the [SSA] that you were disabled starting on October 29, 2017?
    . . . .
A. Most of the information that's written there, that's filled out in that document, is because of the way that Mr. Juan Delgado insisted that I had to out that document.

Q. Your contention is that he forced you to write this document?

A. Well, he, he told me, in a very threatening way, that if I wanted to apply for social security and any of the other help that I needed at the time, that I had to write a letter to him. And he told me exactly what to write in that letter. . . . So the only way I could receive the benefits, including social security, was to write the letter exactly how he told me to do it, and that I also had to ask him for a separation letter due to disability.
    . . . .
Q. And Juan Delgado threatened you to write the letter how? Your separation letter how?

A. He told me to stand up. And he asked me if I walk with a cane. And I told him that recently I had to use the cane in order to stand up - - in order to be standing up. And at that time, he determined that I couldn't work at the [USPS].

ECF No. 198-6 at 57, ¶¶ 3–25; ECF No. 198-6 at 58, ¶¶ 1–6; ECF No. 198-6 at 60, ¶¶ 9–16. No reasonable jury could conclude that Plaintiff's testimony describes threat, force, or coercion by Mr. Delgado. The definitions of the words threat, force, and coercion offer some guidance. According to Black's Law Dictionary, the term "threat" is defined as "[a] communicated intent to inflict harm or loss on another or on another's property, esp[ecially] one that might diminish a person's freedom to act voluntarily or with lawful consent." Black's Law Dictionary (11th ed. 2019). Moreover, the term "coercion" means "[c]onduct that constitutes the improper use of economic power to compel another to submit to the wishes of one who wields it." Black's Law Dictionary (11th ed. 2019). Finally, the term "force" means "[p]ower, violence, or pressure directed against a person or thing." Black's Law Dictionary (11th ed. 2019). The supplied definition terms suggest that for Plaintiff's testimony to carry the day, it must show that Mr. Delgado or USPS intended to inflict harm on Plaintiff by making him do something against

his will—i.e., something he would not otherwise or willingly do—that was to the benefit of Mr. Delgado or USPS.

No reasonable jury could conclude that Plaintiff's testimony shows that he was threatened, coerced, or forced into doing something he would not otherwise do because applying for disability benefits was Plaintiff's only feasible, favorable alternative. At the time Plaintiff had met with Mr. Delgado after November 10, 2017 (the date his reasonable accommodation request had already been denied), Plaintiff effectively had four options: (1) resign without disability benefits, (2) eventually be terminated without disability benefits, (3) continue working at USPS, or (4) request a separation letter and apply for disability benefits. Plaintiff does not cite to any evidence in the record to suggest that he would have preferred option one or two. To the contrary, Plaintiff's February 12, 2018, letter states that he "made the personal choice of retiring through OPM" and therefore desired disability benefits. ECF No. 182-7 at 1. Additionally, no reasonable jury could conclude that a person would prefer or find favorable options one and two over three and four.

Plaintiff does, on the other hand, point to evidence reasonably indicating that he wanted to continue working for USPS, even after his reasonable accommodation request had been denied on November 10, 2017 (i.e., option three). *See* ECF No. 182-9. However, as per the analysis above, there were no vacancies available for Plaintiff in late 2017 in which he could have performed and which qualified as reasonable accommodations under the law. Hence, Plaintiff's only remaining viable and rational choice was the fourth option, that is, to request a separation letter and apply for disability benefits. Consequently, no reasonable jury could conclude that he was coerced, forced, or threatened into doing something he would have otherwise done anyways. Likewise, no reasonable jury could conclude that Mr. Delgado

intended to inflict harm on Plaintiff by instructing him on the process of applying for disability benefits—instructions that later resulted in monetary gain for Plaintiff by way of receiving disability benefits.[18] Accordingly, Plaintiff has failed to provide non-conclusory evidence that Mr. Delgado used threat, force, or coercion in explaining how to apply for disability benefits. In sum, Plaintiff's letters dated January 10, 2018, and February 9, 2018, where Plaintiff requested from USPS a letter of separation based on disability, are not tainted by threat, force, or coercion.

Suggesting that USPS's notice of disability separation letter was a pretext for retaliation, Plaintiff cites to the letter itself where it explicitly notes that he had been absent since December 27, 2016. ECF No. 198-7. Plaintiff's assertion is well-taken because the December 27, 2016, date is clearly incorrect, and Defendants chalk it up to administrative error. ECF No. 225 at 18. However, the notice of disability separation letter, even with the incorrect December 27, 2016, date, does not aid Plaintiff in proving the but-for standard of causation.[19] As previously explained, Plaintiff must present evidence for a reasonable jury to conclude that had the November 4, 2017, EEO charge not occurred, he would not have received the notice of separation based on disability on February 26, 2018. Plaintiff has not met this burden in light of his January 10, 2018, and February 9, 2018, letters where he requested from USPS a separation letter based on disability. No reasonable jury could conclude that absent the EEO charge on November 4, 2017, USPS would not honor Plaintiff's explicit requests for a notice of disability separation and effectively keep Plaintiff as an employee after it had determined that he was

---

[18] Furthermore, Mr. Delgado's deposition testimony under oath reflects that a notice of separation disability was required to apply for disability benefits under FERS and could be used to support an SSDI package. ECF No. 181-20 at 11, ¶¶ 1–5; ECF No. 181-20 at 10, ¶¶ 2–8. Plaintiff asserts that this testimony is inadmissible because it is the opinion of Mr. Delgado and that he has no basis for this knowledge. E.g., 198 at 49, ¶ 245. However, it is reasonable for a Human Resources Manager of USPS to have familiarity with the requirements of an application package of a retirement system afforded to federal employees.

[19] While Plaintiff's notice of disability separation letter with the incorrect December 27, 2016, date could be used as evidence to establish pretext, that requirement only arises after Plaintiff establishes a prima facie case. *Palmquist*, 689 F.3d at 70. Without first proving but-for causation, the pretext inquiry does not arise. *See id.*

unable to continue working at USPS. Hence, Plaintiff has failed to provide evidence to meet the causation element of his retaliation claim regarding his notice of separation dated February 26, 2018. Because the court finds that all of Plaintiff's remaining claims must be dismissed as a matter of law, Defendants' motion for summary judgment is GRANTED.[20]

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. Therefore, Plaintiff's claims of disability discrimination and retaliation under the Rehabilitation Act are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of March, 2024.

s/Marcos E. López
U.S. Magistrate Judge

---

[20] Plaintiff could feel "short-changed" by the fact that not all his arguments were explicitly addressed in this opinion and order. However, this is a necessary result considering that much of Plaintiff's arguments in his response in opposition (ECF No. 200) are either a "scatter-gun collection of assertions" or undeveloped, and "[i]t is not [the court's] job, especially in a counseled civil case, to [mine the record,] create arguments for someone who has not made them[,] or to assemble [contentions] from assorted hints and references scattered throughout the brief." *Yeomalakis v. F.D.I.C.*, 562 F.3d 56, 61 (1st Cir. 2009). Many of Plaintiff's arguments are either not supported by the record citation or have no citation at all. *See, e.g.*, ECF No. 198 at 88, ¶ 171 (suggesting that USPS failed to comply with the EEOC Appeals Decision (ECF No. 198-39 at 6–7) without providing a record citation); ECF No. 200 at 31 (arguing that Mr. Delgado refused to hear Plaintiff's appeal to him of the November 10, 2017, reasonable accommodation denial, without providing a record citation or proposing a fact stating so). Other "arguments" are discussed in no more than a few sentences without further development. *See, e.g.*, ECF No. 200 at 10 (stating in one sentence that the DRAC did not offer Plaintiff the ability to go on unpaid leave, but failing to further explain how this could have been a reasonable accommodation); ECF No. 200 at 20 (claiming that the USPS Reasonable Accommodation Handbook places the burden on the employer to identify a reasonable accommodation and quoting out of context a provision from said handbook without further explanation or argument (*see also* ECF No. 198 at 80, ¶ 138)). Accordingly, these arguments are waived. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *see also Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir. 1988) ("A party has a duty to put its best foot forward before the magistrate: to spell out its arguments squarely and distinctly.").